J-A02011-16

2017 PA Super 148

| | |
|---|---|
| PATRICIA BRITTAIN A.K.A., PATRICIA MAINES, ADMINISTRATOR OF THE ESTATE OF BARBARA ANN MAINES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HOPE ENTERPRISES FOUNDATION INCORPORATED, AND/OR HOPE ENTERPRISE INC., AND/OR WILLIAM BIRT, AND/OR HEATHER PETERS AND/OR SELECTIVE INSURANCE COMPANY OF AMERICA | |
| Appellees | No. 875 MDA 2015 |

Appeal from the Order April 21, 2015
In the Court of Common Pleas of Luzerne County
Civil Division at No: 10467-CV-2010

| | |
|---|---|
| PATRICIA BRITTAIN A.K.A., PATRICIA MAINES, ADMINISTRATOR OF THE ESTATE OF BARBARA ANN MAINES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HOPE ENTERPRISES FOUNDATION INCORPORATED, AND/OR HOPE ENTERPRISE INC., AND/OR WILLIAM BIRT, AND/OR HEATHER PETERS AND/OR SELECTIVE INSURANCE COMPANY OF AMERICA | |
| Appellees | No. 950 MDA 2015 |

Appeal from the Judgment Entered April 30, 2015
In the Court of Common Pleas of Luzerne County

J-A02011-16

Civil Division at No: 10467-CV-2010

BEFORE: PANELLA, J., STABILE, J., and FITZGERALD, J.[*]

OPINION BY STABILE, J.                              **FILED MAY 17, 2017**

In these consolidated appeals, Patricia Brittain, a.k.a. Patricia Maines ("Brittain" or "Appellant"), as Administrator of the Estate of Barbara Ann Maines, appeals from the order of the Court of Common Pleas of Luzerne County entered April 21, 2015, finding that Brittain was not entitled to a new trial limited to a determination of punitive damages,[1] and from the judgment entered on April 30, 2015. Brittain argues that the trial court erred in failing to hold a new trial limited to the award of punitive damages assessed against Appellee, Hope Enterprises Incorporated ("Hope"), and in failing to calculate and include post-judgment interest for compensatory damages from the date of the jury's verdict. Appellees, Hope and William Birt ("Birt"), did not file cross-appeals. However, on July 27, 2015, they filed an "Emergency Application to Remand to the Trial Court for Hearing on Newly-Discovered Evidence Regarding Possible Fraud on the Court with Regard to Plaintiff's Wrongful Death Claim" ("Emergency Application"). After careful review, we remand for the trial court to decide the issues raised in the Emergency Application.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Brittain's appeal from the April 21 order is an interlocutory appeal by permission. **See** 42 Pa.C.S.A. § 702(b); Pa.R.A.P. 1311(b).

- 2 -

By way of background, on October 15, 2012, a jury returned a verdict in this wrongful death and survival action[2] stemming from the death of 31-year old Barbara Ann Maines ("Barbara"), a resident of a Hope group home who suffered from cerebral palsy and was unable to speak or walk. Barbara was a passenger in a van operated by Hope employee Birt that collided with a vehicle operated by Appellee, Heather Peters ("Peters").[3] Barbara subsequently died from a lacerated liver that was not timely reported. The jury found Hope and Birt negligent and awarded Appellant, in her capacity as administrator of the Barbara's estate, a total of $3,018,628.86 in damages. The award consisted of $2,018,628.86 in wrongful death damages for medical bills, funeral expenses, and loss of services, to benefit Sharon Moyer—represented to be Barbara's mother, and $1,000,000 for survival damages to Barbara's estate. The jury also awarded $100,000 in punitive damages against Hope only. After appeal to and remand from this Court, we directed the trial court to conduct proceedings to determine the amount of delay damages to which Appellant was entitled.

On April 21, 2015, a hearing was held before the trial court at which time the court anticipated wrapping up pending matters to calculate delay damages in accord with our directive. N.T., Hearing, 4/21/15, at 2.

---

[2] 42 Pa.C.S.A. §§ 8301 (wrongful death) and 8302 (survival).

[3] Prior to trial, Peters' insurance carrier tendered Peters' $15,000 liability limits. The jury did not attribute any negligence to Peters.

Instead, Appellant's counsel argued that Appellant still was entitled to a new trial limited to the issue of punitive damages. The trial court disagreed, did not proceed to calculate delay damages, and certified for appeal the issue of whether Appellant was entitled to a new trial on delay damages as a controlling issue of law.

Immediately after that hearing, Appellant's counsel apparently hand wrote a praecipe directing the prothonotary to enter judgment in favor of Brittain and Barbara in their individual capacities, despite the fact that the verdict was entered only in favor of the estate and Brittain as administrator of the estate. *Id.* at 64. Appellant's praecipe also requested that judgment be entered against two nonparties to this suit, Selective Insurance Company of America ("Selective") and the Hope Foundation, Inc. ("Hope Foundation"). N.T., Hearing, 4/28/15, at 3-4.

Selective posted the appeal bond from the judgment entered in this case. *Id.* at 10-11. In accordance with Pa.R.A.P. 1734(c), liability against a surety may be enforced on application in the lower court. The record does not reflect that Appellant made any such application before entering judgment against Selective. It is not clear on what basis Appellant filed judgment against the Hope Foundation. Appellees' counsel filed motions to strike these judgments.

On April 28, 2015, the trial court reconvened the hearing to entertain Appellees' motion to strike the judgments and to consider the assessment of delay damages. *Id.* at 2. At the hearing, Appellees represented that they

were prepared to make payment on the judgment once it was properly entered. *Id.* at 17. Appellees asked to pay the judgment into court and requested a hearing regarding distribution to establish the proper parties to the case, in an effort to avoid future issues claiming they made payment to the wrong entities. *Id.* at 17-18. Appellant's counsel strenuously objected, pointing out to the court that only he and his clients would be payees on the check. *Id.* at 21-22. He explained he would put the money into his trust account and file appropriate paperwork in the county where the estate was raised and where a judge would decide distribution. *Id.* In response, the trial court explained it was obligated to determine the amount of delay damages under this Court's remand order. The court would then decide what to do with counsel's information. *Id.* at 25.

After discussing delay damages, the trial court asked Appellees' counsel if there was a legitimate concern as to whether the money would be paid out wrongfully. *Id.* at 30. In response, counsel for Appellees presented the petition for probate and grant of letters filed in Columbia County, reflecting that Brittain was Barbara's sister, despite acknowledgement by Appellant's counsel during trial in Luzerne County that Brittain was Barbara's aunt. *Id.* at 30, Exhibit 2. Appellees' counsel then explained that Barbara's mother, Sharon Moyer, had renounced her right to administer Barbara's estate because she was not competent. *Id.* at 31. Barbara's siblings likewise renounced. *Id.* Counsel explained that although Sharon Moyer was not competent, there was no evidence that a legal

- 5 -

guardian had been appointed for her. *Id.* Therefore, it was not clear how money from Barbara's estate would be distributed. *Id.* Counsel further explained that during trial Sharon Moyer was identified as Barbara's biological mother, yet was identified in the application for letters of administration as Barbara's sister. *Id.* at 34. Additionally, Marcella Rheppard and Leslie Gross were identified as Barbara's sisters in the application for letters of administration, yet they were her aunts. *Id.* Edward Maines, apparently Barbara's uncle, likewise was represented as her brother in the application for letters of administration. *Id.* The trial court found these revelations to be shocking. *Id.*

In response, Appellant's counsel admitted there was an error in the application for letters of administration, but regardless, represented to the court that he would not distribute any money without an order from the Columbia County Court where Barbara's estate was opened. *Id.* at 35-36. It was counsel's opinion that the trial court had no jurisdiction to decide where the money went, and he would seek an order from the Columbia County Court directing distribution of Barbara's estate. *Id.* at 36.

The trial court stated that no court in this Commonwealth would allow issuance of a check under circumstances where letters may have been fraudulently or improvidently granted. *Id.* at 37. It was the trial court's opinion that the Columbia County Court was the tribunal to review the propriety of Brittain's appointment as administrator and to direct disposition of the verdict proceeds. However, the court noted it would be careless for

the trial court to simply have the money paid over to the administrator. *Id.* at 37, 40-41. Appellant's counsel strenuously objected once again to the trial court not ordering that the money be paid and represented that not a single cent of the money would be paid until there was a further order of court. *Id.* at 41-42. The trial court reiterated its concern with the estate, and noted that if Sharon Moyer is **the only biological heir as mother of the decedent**, she would be entitled to the entire wrongful death award. *Id.* at 44 (emphasis added). Nonetheless, the court indicated that with respect to an estate, a personal representative must act on its behalf and any judgment would have to be payable to the personal representative and not to the estate itself. *Id.* at 44-45.

Following a recess, there were extensive discussions and arguments on delay damages and post-judgment interest. *Id.* at 45-60. The trial court then announced what it would order by way of judgment. First, the trial court struck the judgments entered against Selective and the Hope Foundation as having been inappropriately entered and having been entered while a motion for delay damages was outstanding. *Id.* at 63. The court likewise struck the individual judgments. *Id.* at 64. It then ordered that "judgment be entered in favor of Patricia Brittain, a.k.a. Patricia Maines, administrator of the estate of Barbara Ann Maines, plaintiff, and against Hope Enterprises, Inc. and William Birt, defendants, in the initial amount of $3,018,628.87." *Id.* at 65. The court added delay damages calculated at $157,463.04, for a total judgment in favor of plaintiff and against the

- 7 -

defendants in the amount of $3,176,091.90, plus interest and costs. *Id.* Further, the trial court ordered that "judgment be entered in favor of Patricia Brittain, a.k.a. Patricia Maines, administrator of the estate of Barbara Ann Maines, plaintiff, and against Hope Enterprises, Inc. in the amount of $100,000 constituting the punitive damages award plus interest and costs as permitted by law."[4] *Id.* at 66. The court then indicated it knew of no authority that would allow the judgment to be paid into court, as this was not an interpleader action. *Id.* The court deferred to the jurisdiction of the Columbia County Court to review the matters that had been raised, and indicated there was nothing to prevent a judgment debtor from seeking emergency consideration of matters of great concern before the proper tribunal. *Id.* at 66-67.

Appellees' counsel once again voiced his concern about making payment directly to plaintiffs after which the court encouraged counsel to include a stipulation with regard to payment of the judgment monies. *Id.* at 70. Ultimately, Appellant's counsel indicated that he would not agree to any stipulation and would file that day a writ of execution and would take proper appeals. *Id.* at 74. In response, Appellees' counsel requested, based upon

---

[4] The jury slip awarding punitive damages is silent as to whether these damages were awarded in connection with the wrongful death action, the survival action, or both. We presume these damages were awarded in connection with the survival action, as Pennsylvania does not permit the award of punitive damages in a wrongful death action. *See Harvey v. Hassinger*, 461 A.2d 814, 815-816 (Pa. Super. 1983).

the comments by Appellant's counsel, a brief stay of execution to resolve the matter. *Id.* at 75. Appellant's counsel reconfirmed that he would execute on the judgments as soon as he left court that day. *Id.* At that point, the trial court indicated it would enter its order that afternoon and would decide whether counsel had to come in for an emergency motion for stay. *Id.* at 76. The trial court explained it had tried to create a framework as an accommodation on how monies would be paid. However, if the parties were not able to come to terms, the court would not order payment, since that would set off a whole other series of issues. *Id.* The trial court again encouraged counsel to revisit the matter and announced its availability in chambers should counsel reach an accord. *Id.*

At no time during the April 21 or April 28, 2015 hearings did the issue ever arise, nor did the facts suggest, that Sharon Moyer—represented at trial to be Barbara's biological mother—was not legally entitled to bring or recover on a wrongful death action as Barbara's parent.

The trial court's April 28, 2015 orders were entered on the trial court docket on April 30, 2015. Brittain filed appeals from both the April 21 and April 30 orders challenging the denial of a new trial on punitive damages and the failure of the trial court to calculate and include in the judgment post-judgment interest.

On July 27, 2015, Appellees filed in this Court their Emergency Application. On July 29, we issued an order providing seven days for Appellant to respond. Appellant timely filed an answer on August 5, 2015.[5]

In their Emergency Application, Appellees represented that they had discovered evidence strongly suggesting that Brittain misrepresented material facts in her application for letters of administration that, if proven, would establish that none of Barbara's living family members—including Sharon Moyer, identified by Brittain at trial to be Barbara's mother—had legal standing to assert a wrongful death claim under Pennsylvania's wrongful death statute. Emergency Application at ¶ 3. More specifically, Appellees represented that after the initial discrepancies were found and brought to the trial court's attention, they further discovered in reviewing documents filed in the Orphan's Court in Snyder County that Barbara had been legally adopted by her maternal grandmother, Madeline Maines, thereby terminating Sharon Moyer's parental rights. Emergency Application at ¶ 25. October 2000 documents from the Snyder County Orphan's Court indicated that Barbara was adjudicated incapacitated and that her *sister*,

---

[5] Prior to Appellees' filing of the Emergency Application, Appellant was represented by Michael J. Pisanchyn, Jr., Esquire. On July 31, 2015, Howard J. Bashman, Esquire, entered his appearance as co-counsel for Appellant, and subsequently filed the August 5, 2015 answer as well as Appellant's brief.

Brittain, was appointed her legal guardian. These documents further confirmed that Barbara was not capable of providing "services" to anyone, including her then legal parent, Madeline Maines. Emergency Application at ¶¶ 26, 28. Appellees argue that because Barbara had no spouse or children at the time of her death and because her parent Madeline Maines was deceased, no one had standing to recover the $2,000,000 in wrongful death damages. Appellees contended that if these facts were correct, the entire wrongful death and survival verdict and judgment must be set aside.[6] Emergency Application at ¶ 41.

Even more troubling is Appellees' averment that on April 30, 2015, two days after their court hearing, Brittain's counsel, Michael J. Pisanchyn, Jr., filed a "Petition to Distribute Funds" with the Court of Common Pleas of Columbia County, Emergency Application at ¶ 36,[7] and took a 48% fee before depositing the judgment proceeds with the Columbia County Court of Common Pleas. Emergency Application at ¶ 36, n. 11. This is problematic on many levels. First, it appears counsel took these fees before securing court approval. Further, it is not clear whether these fees were paid only for

_____

[6] Appellees maintain that much of the testimony in the wrongful death action influenced damages awarded in the survival action. We offer no opinion as to that argument, leaving that issue for the trial court upon remand.

[7] It is not clear whether counsel's representation to the trial court, pledging that no funds would be distributed without a court order, was subject to an agreeable stipulation.

the wrongful death damages or for both wrongful death and survival damages. If there is merit to Appellees' Emergency Application, it is uncertain whether counsel is entitled to *any* fees. Moreover, as Appellees aver, it is questionable whether Brittain or her counsel advised the Columbia County Orphans' Court that Sharon Moyer's parental rights were terminated by virtue of her legal adoption by Madeline Maines, even though it is alleged Brittain and her family members were uniquely aware of this familial history. Emergency Application at ¶ 39.

Citing **Hornick v. Bethlehem Mines Corp.**, 165 A. 36, 37 (Pa. 1933), Appellees argue that this newly-discovered evidence entitles them to a new trial. They contend this evidence was discovered after trial, it could not have been obtained at trial by reasonable diligence, it is not cumulative or offered to impeach credibility, and it will likely compel a different result. If Appellees' averments are confirmed, they assert, their Emergency Application has substantial merit and this Court should remand this matter to the trial court to consider this after-discovered evidence.

Appellant counters that we should deny Appellees' application and address the issues raised in Appellant's brief. She claims Appellees have waived any challenge to Appellant's capacity to sue because they failed to assert a challenge by preliminary objection or in answer to Appellant's complaint. Appellant's Answer in Opposition, 8/5/15, at 2 (citing **Drake Mfg. Co. v. Polyflow, Inc.**, 109 A.3d 250, 257-58 (Pa. Super. 2015)). Further, she argues Appellees raised questions about Barbara's familial

- 12 -

relationships at the April 28, 2015 hearing but did not file an appeal or cross-appeal from the April 30, 2015 orders entered following the hearing. *Id.* Appellant also complains that the "alleged 'possible fraud'" Appellees complain of "is not the type of fraud that is sufficient to reopen a judgment based on supposedly newly discovered evidence." *Id.* at 9-10 (citing and quoting *Simpson v. Allstate Ins. Co.*, 504 A.2d 335, 337 (Pa. Super. 1986)).

With regard to the lack of a cross-appeal, we acknowledge that Appellees requested during the April 28, 2015 proceeding that the court conduct a hearing. However, the request was made in reference to the demand by Appellant's counsel that payment be made to Appellant, because it was not clear if a legal guardian had been appointed to receive funds on behalf of Sharon Moyer, the wrongful death beneficiary. N.T., Hearing, 4/28/15, at 31. This is far different from the contention now being raised in Appellees' Emergency Application that, based upon after-discovered evidence, Sharon Moyer was not Barbara's legal parent and, therefore, Appellant was not entitled to bring a wrongful death action on her behalf.[8] If, as Appellees contend, this after-discovered evidence became known to them only after the April 28 hearing, then they in fact are entitled to have

_____

[8] *See* 42 Pa.C.S.A. § 8301(b), which provides in relevant part that "the right of action [for wrongful death] created by this section shall exist only for the benefit of the spouse, children or parents of the deceased."

- 13 -

the trial court hold a hearing on their Emergency Application. The lack of a cross appeal does not defeat their application.

We also reject Appellant's suggestion that the alleged possible fraud is not the type of fraud warranting reopening a judgment. As Appellees' correctly recognize, our Supreme Court has held that "[c]ourts, when appealed to, will prevent the triumph of fraud, and, where a judgment has been obligated by fraud, no court will permit its records and processes to be the instruments of infamy." Appellees' Brief at 16 (quoting *Sallada v. Mock*, 121 A. 54, 55 (Pa. 1923)). *See also Commonwealth v. Harper*, 890 A.2d 1078, 1082 (Pa. Super. 2006) ("courts simply will not countenance fraud, and when a decision is obtained through its use, the court retains the inherent power to rescind that decision").

Appellant argues that only "'extrinsic' fraud, and not 'intrinsic' fraud, can be used to reopen an otherwise final judgment." Appellant's Reply Brief at 23 (citing *McEvoy v. Quaker City Cab Co.*, 110 A. 366 (Pa. 1920)). While Appellant accurately states the law, we disagree with her assertion that the fraud alleged by Appellees does not constitute extrinsic fraud. As our Supreme Court explained in *McEvoy*:

> By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. . . . Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic, and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of

- 14 -

the prevailing party the other has been deprived of an opportunity for a fair trial.

*Id.* at 368. *See also* Black's Law Dictionary 686 (8th ed. 2004) (defining "extrinsic fraud" as "[d]eception that is collateral to the issues being considered in the case; intentional misrepresentation or deceptive behavior outside the transaction itself (whether a contract or a lawsuit), depriving one party of informed consent or full participation"). Further,

> Extrinsic fraud operates, not upon the matter pertaining to the judgment, but the manner in which it is procured[.]
>
> In 34 Corpus Juris, 282, it is stated that "fraud practiced upon the court is always ground for vacating the judgment, as where the court is deceived or misled as to the material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair."

*Willetts v. Willetts*, 96 Pa. Super. 198, 206 (Pa. Super. 1929) (citation omitted).

In her Amended Complaint, Appellant represented that Sharon Moyer was Barbara's mother. Amended Complaint at ¶ 3. Sharon Moyer testified as if she were Barbara's mother and offered no hint that Barbara had been adopted by Madeline Maines. As Appellees observe, "In pleadings, testimony and briefs in the trial court and this court, [Appellant] referred to Sharon Moyer as [Barbara's] mother." Appellees' Brief at 17 (with footnote 8, identifying instances at trial referring to Sharon Moyer as Barbara's mother). The status of Sharon Moyer as Barbara's mother, and her standing to pursue a wrongful death claim, was collateral to the issue being

considered in the underlying action. Appellant's conduct in misrepresenting Sharon Moyer's status prevented a fair submission of the controversy because her parental rights had in fact been terminated, stripping her of standing to pursue a wrongful death action. *See, e.g., E.T.S. v. S.L.H.*, 54 A.3d 880, 883 (Pa. Super. 2012) ("[a] decree of adoption terminates forever all relations between a child and his biological parents and severs the child entirely from its own family tree and engrafts it upon its new parentage."). Further, there was no conflict in the testimony offered by Sharon Moyer or her siblings, including Appellant, with regard to the relationship between Barbara and Sharon Moyer that required the court to determine the truth or falsity of the testimony. In fact, there was no question as to the relationship. As the trial judge observed, "[T]he [c]ourt's clear recollection was that [Sharon Moyer] was identified as the biological mother of the decedent." N.T., Hearing, 4/28/15, at 34. Therefore, we reject Appellant's assertion that any "possible fraud" was intrinsic. *See McEvoy*, 110 A. at 368.

Also supporting our conclusion that the fraud was extrinsic is the fact Appellant changed course in her Columbia County Petition for Distribution where she represented to that court that Sharon Moyer was Barbara's "biological mother." Petition for Distribution, 4/30/15, at ¶¶ 2, 20, 24. That Sharon Moyer *was* Barbara's biological mother has no legal significance in light of the fact Barbara was adopted by the now-deceased Madeline Maines,

Sharon Moyer's mother. **E.T.S. v. S.L.H., supra.** By stating a "fact" that has no legal consequence, it appears Appellant is attempting to conceal the fact that no one, including Sharon Moyer, had legal standing to pursue the wrongful death action, the proceeds of which are a subject of the petition to distribute.

We conclude that knowingly maintaining a wrongful death action on behalf of someone for whom that right of action does not exist prevents a fair submission of the controversy and constitutes fraud on the court that warrants setting aside the judgment wrongly obtained. Further, for reasons already explained, we reject the argument that Appellees waived a challenge to Appellant's capacity to sue on procedural grounds.

Based on Appellees' Emergency Application, we find that a remand is warranted. However, this matter is complicated by the fact that, according to the Emergency Application, Appellant's counsel already has filed a petition for distribution before the Columbia County Orphan's Court, where Barbara's estate has been opened. It is not known whether Appellees are entitled to notice of those proceedings, if they have been given notice, whether they are participating in those proceedings, or whether they would be permitted to intervene. The question therefore arises whether the orphans' court or the trial court has jurisdiction over the questions relating to distribution or standing in this wrongful death and survival action.

While the jurisdiction of the orphans' court is mandatory with respect to certain matters, that court may also exercise jurisdiction over other matters where there are substantial questions concerning anything within its mandatory jurisdiction. **See** 20 Pa.C.S.A. §§ 711, 712. It is clear that the orphans' court must approve any settlement or compromise of a survival action. **Moore v. Gates**, 580 A.2d 1138, 1141 (Pa. Super. 1990) (*en banc*). If a lawsuit has been filed, however, then court approval of a survival action can be obtained either in the orphans' court or in any other court in which the action is pending. 20 Pa.C.S.A. § 3323(b). On the other hand, where the only heirs entitled to recover for the wrongful death of a decedent are competent adults, they may settle their claims without court approval. **Id.**

In this case, where a wrongful death and survival action has been tried to verdict, either the trial court or the orphans' court may consider issues relating to distribution of the judgment proceeds or standing. While either the orphans' court or trial court may pass upon the distribution of the judgment proceeds in a wrongful death and survival action, it is known that local rules of court commonly direct which division of court is to hear these matters, typically dependent upon whether the matters have been settled or tried to verdict. In this case, as stated, distribution and resolution of issues raised by Appellees may be heard in either the trial court or the orphans' court.

Again, this matter is somewhat complicated because appeals are currently pending from orders of the trial court in Luzerne County and, according to the Emergency Application, a petition for distribution has been filed with the Orphans' Court of Columbia County. It would appear that presently we have two courts involved in a matter with overlapping issues. For sake of order and judicial efficiency, these proceedings need to be coordinated. Since the matters raised by the Appellees' Emergency Application go to the core of the trial proceedings, it would make sense that the trial court decide the application. If Appellees' Emergency Application proves meritorious, action affecting the judgments would be required by the trial court that would, in turn, necessarily affect the proceedings before the orphans' court. It would seem that the orphans' court should stay any distribution proceedings pending the outcome of any after-discovered evidence proceedings before the trial court.

Appellees' Emergency Application granted as outlined above. Case remanded for further proceedings before the trial court consistent with this Opinion. In light of our disposition, we decline to reach the issues raised by Appellant. In the event the trial court determines there is no merit to Appellees' Emergency Application, Appellant may reassert her issues before this Court.

Appellees' Emergency Application granted. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2017