J-A25037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-14 | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 89 EDA 2018 |
| JAMES W. CADDLE AND GLENDENE CADDLE, | : : : : | |
| Appellants. | : | |

Appeal from the Order Entered, December 21, 2017,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s):  No. 2013-33215.

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED FEBRUARY 19, 2019**

James W. Caddle and Glendene Caddle appeal from the order denying their motion to void judgment in this mortgage foreclosure action.  After a thorough review, we affirm.

The facts and convoluted procedural history are as follows:

The Caddles are the owners of property in Horsham, Pennsylvania, as evidenced by deed dated October 30, 2002.  On June 28, 2007, James Caddle executed a note and borrowed $562,500 from American Mortgage Express Corporation.  As security, the Caddles gave American a mortgage.  On April

19, 2010, this mortgage was assigned to HSBC Bank USA National Association as Trustee for Wells Fargo; the assignment was recorded.

On December 28, 2010, James Caddle executed a Loan Modification Agreement with Wells Fargo Bank to increase the amount of the loan and adjust the payment amount. The Caddles executed another mortgage to reflect these changes. A corrective assignment of mortgage was recorded on October 31, 2012.

The Caddles allegedly defaulted on the terms of the mortgage for failure to pay principal and interest due in March, 2013. Consequently, in November 2013, HSBC filed a mortgage foreclosure action against the Caddles. After filing preliminary objections, which the trial court overruled, James Caddle filed an answer and new matter, which he subsequently amended.

On April 13, 2016, HSBC took a default judgment against Glendene Caddle for failure to respond to the complaint in mortgage foreclosure. That same day, April 13, 2016, HSBC filed a motion for summary judgment. In its prayer for relief, HSBC asked that judgment be entered against both of the Caddles. Only James Caddle opposed HSBC's motion.

After filing the motion for summary judgment, HSBC voluntarily vacated the default judgment entered against Glendene Caddle on May 12, 2016, which allowed the court to enter judgment on the merits.

By order dated July 6, 2016, the trial court granted HSBC's motion and entered the following order:

AND NOW, this 6 day of July, 2014 upon consideration of Plaintiff's Motion for Summary Judgment and Defendant James Caddle's response thereto, it is herby ORDRERD AND DECREED that Plaintiff's Motion for Summary Judgment is GRANTED. An in rem judgement is entered in favor of Plaintiff and against Defendants, James W. Caddle and Glendene Caddle, in the amount of $652,614.89.

Copies of this order were sent to both James and Glendene Caddle on July 7, 2016.[1]

James Caddle filed a motion for reconsideration on July 14, 2016. The trial court did not grant reconsideration or rule upon his motion. The Caddles did not file an appeal.

On August 8, 2016, Glendene Caddle filed an Answer and New Matter to the mortgage foreclosure complaint. HSBC filed a reply. On February 14, 2017, Glendene Caddle filed a motion for summary judgment. On February 22, 2017, HSBC filed a motion for summary judgment against Glendene Caddle.

On June 19, 2017, the trial court ruled that these motions were moot, because the July 6, 2016 order granting summary judgment in favor of HSBC was entered against both James and Glendene Caddle. Again, no appeal was taken.

On August 28, 2017, almost one year after the order entering an *in rem* judgment against the Caddles' property, and over two months after the trial

---

[1] The order was erroneously dated 2014 rather than 2016. This order was never corrected, but it is notated that the order was sent to the parties on July 7, 2016 and was recorded on the docket as of July 8, 2016.

court concluded that Glendene Caddle and HSBC's motions for summary judgment were moot, the Caddles filed a "Motion to Void Judgment Due to Fraud Upon the Court by Plaintiff." On December 21, 2017, the trial court denied this motion.

The Caddles filed a notice of appeal on December 27, 2017. Both the trial court and the Caddles complied with Pa.R.A.P. 1925.

The Caddles raise the following issues on appeal.[2]

A. Whether the trial court erred in denying the Caddles' motion to void judgment entered pursuant to HSBC's motion for summary judgment over a year ago as untimely and where HSBC relied on fraudulent documents in support thereof and genuine issues of material fact existed?

B. Did the trial court err in finding the Caddles' motion to void the judgment was untimely?

See Caddles' Brief at 2.

In support of their appeal, the Caddles argue that the trial court erred in denying their motion to void the judgment. According to the Caddles, because there was fraud in the underlying summary judgment proceeding and genuine issues of material fact existed, their motion should have been granted and the judgment vacated.[3] Caddles' Brief at 2, 8, 28. We disagree.

_____

[2] The second issue is encompassed within the first issue. However, the Caddles did not raise as an issue in their 1925(b) statement the trial court's conclusion regarding the timeliness of their motion to void the judgment. It is therefore waived. Pa.R.A.P. 1925(a)(4).

[3] The trial court was uncertain how to characterize the Caddles' motion. After some evaluation, the trial court ultimately treated their motion as a motion

Initially, we observe that the judgment in this case was not entered by confession pursuant to warrant of attorney or by default upon praecipe. Rather, it was entered by the trial court in a contested civil action as final disposition of HSBC's motion for summary judgment in this mortgage foreclosure action. "Unlike a judgment entered by confession or by default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after [it has become final]." *Klugman v. Gimbel Brothers, Inc.,* 182 A.2d 223, 225 (Pa. Super. 1962). A judgment entered in a contested proceeding which ends the litigation must either be appealed within thirty days or the trial court must expressly grant reconsideration within thirty days from the entry of judgment. Pa.R.A.P. 903; Pa.R.A.P. 1701(b)(3). Otherwise, the judgment becomes final. Thereafter, the judgment cannot normally be opened, vacated or reconsidered. *Simpson v. Allstate Ins.*, 504 A.2d 335, 337 (Pa. Super. 1986); *Leonard v. Andersen Corp.,* 445 A.2d 1279, 1281 (Pa. Super. 1982).

In this case, the trial court entered judgment as to both James and Glendene Caddle on July 6, 2016. The Caddles had thirty (30) days from that date to take some action to challenge the judgment. See Pa.R.A.P. 903; Pa.R.A.P. 170(b)(3). Although James Caddle timely filed a motion for

---

for reconsideration based upon fraud and new evidence. The Caddles urge this Court to do likewise. Caddles' Brief at 7-8. Regardless of how we characterize their motion, the result is the same.

reconsideration, the trial court did not grant reconsideration or stay the appeal period. Thus, the time within which to file an appeal was not tolled. Pa.R.A.P. 1701(b)(3). Neither James Caddle nor Glendene Caddle appealed the judgment to this Court, despite the prothonotary having sent them notice of the order. The Caddles filed their motion to void judgment well beyond thirty (30) days after the summary judgment order. Thus, on August 5, 2016, the end of the thirty (30) day period, the judgment became final and was not subject to further review.

We recognize that the rule regarding disturbing final judgments is not absolute, even with respect to final judgments entered in adverse proceedings. Where there has been fraud or some other circumstance "so grave or compelling as to constitute 'extraordinary cause' justifying intervention by the court," a judgment, although final, may be opened, vacated or reconsidered. **Simpson**, 504 A.2d at 337. However, the discretionary power of the court over such judgments is very limited. **Id.**

In their motion to void judgment, the Caddles alleged that HSBC committed fraud in obtaining summary judgment. Specifically, on appeal, the Caddles argue that HSBC, through the course of this litigation, produced differing versions of the note with inconsistencies in the note indorsements. Additionally, there were issues relating to the validity of the assignment. According to the Caddles, these circumstances created genuine issues of material fact as to HSBC's standing to bring this action, and therefore

- 6 -

insufficient basis to grant summary judgment.  Caddles' Brief at 7, 8, 11, and 19.

HSBC argues that this type of alleged fraud does not warrant reopening the judgment.  At best, any such fraud constituted intrinsic fraud which does not justify the reopening of a judgment.  HSBC's Brief at 14.  We agree.

It has long been held that "[c]ourts when appealed to will prevent the triumph of fraud, and, where a judgment has been obligated by fraud, no court will permit its records and processes to be the instruments of infamy." *Sallada v. Mock*, 121 A. 54, 55 (Pa. 1923).  However, the Caddles' argument fails to establish the necessary fraud to disturb the final judgment in this case.

Only "'extrinsic fraud' can be used to reopen an otherwise final judgment." *McEvoy v. Quaker City Cab Co.*, 110 A. 366, 368 (Pa. 1920).  Our Supreme Court has explained the difference between extrinsic and intrinsic fraud as follows:

> By the expression "extrinsic or collateral fraud" is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. ... Where the alleged perjury *relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic*, and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial.

*Brittain v. Hope Enterprises Found. Inc.*, 163 A.3d 1029, 1037 (Pa. Super. 2017) (quoting *McEvoy*, 110 A. at 368) *reargument denied* (July 5, 2017), *appeal denied*, 178 A.3d 731 (Pa. 2018) (emphasis added).

- 7 -

In denying the Caddles' motion to void the judgment, the trial court found that the claims of fraud the Caddles asserted were the same claims they previously raised in response to HSBC's 2016 motion for summary judgment. The trial court already determined that these claims were meritless. Trial Court Opinion, 10/4/18 at 4. Moreover, the trial court specifically determined that HSBC, through its undisputed evidence, established that it held the original note with the right to enforce the same. *Id.* at 5. Thus, the trial court concluded that "there [was] no legal basis to deviate from the general rule against disturbing judgments after they have become final." *Id.* at 4.

The claims of fraud raised by the Caddles in support of their motion to void judgment were not extrinsic. Rather, they went to the core of the issues before the trial court. The Caddles even acknowledge this on appeal. Caddles' Brief 5. As such, the Caddles raised claims of intrinsic fraud rather than issues collateral to those to be resolved by the trial. Such claims were insufficient to attack the judgment.

Essentially, the Caddles argue that summary judgment should not have been granted. While that may or may not be true, they should have raised that argument by appealing the entry of summary judgment. They cannot relitigate their claims by filing a motion to void judgment long after the entry of judgment became final. We, therefore, decline to address any of the Caddles' arguments regarding the substantive issues in the mortgage foreclosure action.

The Caddles also argue on appeal that extraordinary cause warrants reconsideration of the final judgment in this case. Caddles' Brief at 27. In support of their position on appeal, the Caddles point to several irregularities in the proceedings before the trial court: 1) date on the face of the order granting summary judgment; 2) the ongoing proceedings relating to Glendene Caddle's case; 3) disposition of HSBC and Glendene Caddle's summary judgment motions as moot without consideration of the merits; 4) the failure of the trial court to address James Caddle's motion for reconsideration; 5) the trial court's entry and subsequent rescission of a case management order. Caddles' Brief at 28. Additionally, the Caddles reiterate the presence of fraud in this case as well as the existence of genuine issues of material fact, which we have addressed above. *Id.* Although extraordinary cause may serve as a basis to disturb a final judgment, we conclude that this principle does not apply in this case.

First, we note that the Caddles did not assert extraordinary cause as a basis for their motion to void judgment, and did not raise an issue pertaining to extraordinary cause in their 1925(b) statement. Rather, they alleged fraud and issues relating to whether the trial court's grant of summary judgment was proper. Therefore, they waived this issue. Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b); *see Tong-Summerford v. Abington Memorial Hospital*, 190 A.3d 631, 649 (Pa. Super. 2018) (where a theory of error different from that presented to the trial court is raised on appeal, the issue is waived, even if both theories support the same basic allegation of error on which relief is

- 9 -

sought).  Even if we were to consider the merits of this issue, we would conclude that there was no extraordinary cause here which would warrant opening the judgment.

We recognize that there were several irregularities in this matter.  However, when HSBC filed its first motion for summary judgment, it was incumbent upon *both* James and Glendene Caddle to take action.  James Caddle did respond, but Glendene Caddle did not respond in any manner.  The Caddles now suggest that Glendene Caddle thought that the original motion only pertained to James Caddle.  However, the prayer for relief clearly indicated that the judgment was sought against both of them.

Additionally, the trial court entered an order which clearly applied to both James and Glendene Caddle and sent notice of the order to both parties individually.  In **Luckenbaugh v. Shearer**, 523 A.2d 399 (Pa. Super. 1987), we stated that "the extraordinary cause referred to in **Simpson** and other cases is generally ***an oversight or action on the part of the court or the judicial process which operates to deny the losing party knowledge of the entry of final judgment so that the commencement of the running of the appeal time is not known to the losing party*.**"  **Id.** at 401 (emphasis added).  There, we concluded that the appellees were aware of the entry of the judgment well within the time prescribed for filing an appeal and thus extraordinary cause did not exist.  **Id.** at 401-402.

Here, both Caddles were made aware of the judgment.  There was no oversight or action by the court or judicial process that denied them notice.

To the contrary, notice was sent to each of them the day after the order was entered. James Caddle was clearly aware, as he filed a motion for reconsideration. Glendene Caddle does not argue that she never received a copy of the order. Yet again, Glendene Caddle did nothing. Furthermore, neither of the Caddles did anything to appeal the entry of the judgment. The Caddles simply neglected to preserve their appellate rights. We previously have held that the neglect of a party's attorney is not enough to establish extraordinary cause. *In re Interest of C.K.*, 535 A2d 634, 640, 643 (Pa. Super 1987). Here, we similarly conclude that the Caddles' neglect in failing to preserve their rights does not amount to extraordinary cause necessary to void the judgment.

Finally, although the Caddles may have thought the case was still active, this does not warrant setting aside the judgment. Despite the confusion in this case after the court entered its June 19, 2017 order denying Glendene Caddle's motion as moot, the Caddles did not file a timely appeal. Rather, they waited over two months to take any action. Again, we cannot deem neglect and delay on their part as extraordinary cause to set aside the judgment.

Based upon the foregoing, we conclude that the trial court properly denied the Caddles' motion to void judgment.

Order affirmed.

Judge Panella joins this memorandum.

Judge Dubow concurs in the result.

- 11 -

J-A25037-18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/19