J-A04011-22

2022 PA Super 111

IN RE: ADOPTION OF: D.G.J. : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: H.L.H. AND E.W.H. :
:
:
:
:
:
: No. 1782 EDA 2021

Appeal from the Decree Entered August 19, 2021
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): AD-21-0010

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY LAZARUS, J.: **FILED JUNE 16, 2022**

H.L.H. and E.W.H. (Petitioners) appeal from the decree, entered in the Court of Common Pleas of Chester County Orphans' Court, denying, with prejudice, their petitions to confirm consent and for adoption of their minor nephew, D.G.J. (Child). After careful review, we reverse and remand.

Child was born in Liberia in July 2006. After Child's parents divorced, Child came to the United States, on December 30, 2014, on a B1/B2 visa.[1]

---

[1] B-1 and B-2 visas are considered "nonimmigrant visas" and are used for temporary stays. "Visitor visas are nonimmigrant visas for persons who want to the enter the United States temporarily for business (visa category B-1), for tourism (visa category B-2), or for a combination of both." https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited 5/26/22). A B-1 visa is for business, whereas a B-2 visa is often used for "tourism[,] vacation[,] visit[s] with friends or relatives[,] medical treatment[,] participation in social events hosted by [] organizations[,] participation by amateurs in musical, sports, or similar events or contests[, or e]nrollment in a short recreational course of study, not for credit toward a
*(Footnote Continued Next Page)*

Since his arrival in the United States, Child has resided with Petitioners, his maternal aunt and uncle, who were also born in Liberia but became naturalized United States citizens on June 13, 2011. Petitioners and Child reside in Coatesville, Chester County, Pennsylvania.

On February 22, 2021, Petitioners filed a "Report of Intention to Adopt" (Report) Child, averring that "[o]n November 27, 2020, Child's biological parents signed consents to adoption." Report of Intention to Adopt, 2/22/21, at 1. Attached to the Report are signed, dated and notarized consents, executed by Child's biological parents, indicating that they

> voluntarily and unconditionally consent to the adoption of [Child,] understand that by signing th[e c]onsent[s they] indicate [their] intent to permanently give up all rights to [Child,] understand[] [Child] will be placed for adoption by [Petitioners, that they] understand [they] may revoke th[e c]onsent[s] . . . by placing the revocation in writing and serving it upon the agency or adult to whom [Child] was relinquished[, and that the c]onsent[s] to an adoption is irrevocable unless [they] revoke [them] within THIRTY (30) DAYS after executing [them.]

---

degree[.] **Id.** A visitor visa cannot be used to obtain permanent residence in the United States. **Id.**

Although you can extend your B-1 and B-2 visa, by application, for up to a maximum of ten years, you are only permitted to remain in the United States for up to 6 months at a time and must return to your home country for some time and travel back to the United States. https://visa-applications.org/news/usa/b-visas/ (last visited on 5/13/22).

We recognize, however, that Child's immigration status is not before us today and we do not opine on the effect of any domestic adoption decree on Child's immigration status. **See infra** at n.6.

Statutory Consent of Birth Mother, 11/27/20, at 1-2; Statutory Consent of Birth Father, 11/27/20, at 1-2.[2]  Child's biological parents also executed statements indicating that they wish to be contacted by Child after he attains the age of 18.  Statement by Parent, 11/27/20, at 1.

On that same date, Petitioners filed petitions to confirm biological parents' consents to adopt, as well as a petition for adoption of Child.  On August 19, 2021, the trial court issued its decree denying the petitions with prejudice and without a hearing.  The Orphans' Court judge determined that because Child is foreign-born, "until the Petitioners comply with [23 Pa.C.S.] § 2908,[3] the court [] lack[s] jurisdiction[,] the [Petitioners'] filings [are]

_____

[2] We recognize that if parental rights are terminated to a child, then there is no need for a consent to adopt from that parent.  **See** 23 Pa.C.S.A. § 2714 (consent of parent to adoption not required if decree of termination with regard to such parent has been entered and if parental rights have not been terminated, court may find, after notice and hearing, that consent not required where court finds grounds exist for involuntary termination under section 2511); **id.** at § 2901 ("no decree of adoption shall be entered unless natural parent or parents' rights have been terminated").  However, the reverse is not always the case.  **See id.** at § 2903 (when parent consents to adoption of child by spouse, parent-child relationship remains whether or not consenting parent is one of petitioners in adoption proceedings).  In fact, under our Adoption Act, the written consent of a parent or guardian of a child under the age of 18 "shall not be required," but the adults [who have been] car[ing for] the child shall file a separate consent to accept custody of the child if the child has been "for a minimum period of 30 days in the[ir] exclusive care[.]"  23 Pa.C.S. §§ 2502(A)-(B).

[3] Section 2908 of the Act states:

§ 2908. Foreign decree of adoption.

*(Footnote Continued Next Page)*

procedurally defective[,] and the court [is] prohibited from proceeding with any other portion of the Adoption Act which might otherwise apply." Trial Court Opinion, 9/16/21, at 4.

Petitioners filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Petitioners present the following issues for our consideration:

> (1)     Did the [Orphans' Court] err as a matter of law in determining that the Pennsylvania Adoption Act, codified at 23 Pa.[C.S.] § 2101, et. [s]eq.[,] and specifically, 23 Pa.C.S. § 2908 [] and its implementing Rule 15.9, both of which only apply according to their clear and unambiguous terms when a party files an adoption petition in a foreign country while the child is a resident of that country and subsequently seeks to register that adoption decree in the Commonwealth of Pennsylvania, govern[] the current matter, where the prospective adoptee has been a resident of the Commonwealth of Pennsylvania for the preceding six years, and the prospective adoptive parents commence[d] an adoption proceeding in this Commonwealth?
>
> (2)     Did the Orphans' Court both err as a matter of law and abuse its discretion by ignoring the clear and unambiguous

_____

> **(a)     Registration. —** When a minor is adopted by a resident of this Commonwealth **and a final decree of adoption is made or entered in conformity with the laws of a foreign country**, the adopting parent shall file a properly authenticated copy of the foreign decree of adoption, a copy of the child's visa and either the child's birth certificate or some form of birth identification with the clerk of the court in the county of residence of the parent. If the foreign decree of adoption is not in English, the adopting parent shall also file a certified English translation. If no birth certificate or birth identification can be obtained, the adopting parent shall include an affidavit stating the reason therefor.

23 Pa.C.S. § 2908(a) (emphasis added).

language of [s]ection 2908, and[,] instead[,] resorting to the implement[ation of] Rule 15.9 in order to find that because [Child] was born in Liberia, he is a "foreign[-]born child," a term with a peculiar and appropriate meaning in the implementing rule designed to apply only to a child that was both born in a foreign country and resided in that foreign county at the time that the adoption proceedings were commenced, thereby entering the United States on certain types of visas[, which is] inapplicable here?

(3)   Did the Orphans' Court['s] interpretation of Pennsylvania's statutes produce an absurd result by compelling all prospective adoptees that were born in a foreign country, yet have resided in the Commonwealth of Pennsylvania for several years, to return to their birth countries, comply with the laws of adoption in their birth countries, and then seek to reenter the United States and thereafter register their foreign adoption decree utilizing the registration procedure contained in [s]ection 2908?

(4)   Was the [Orphans' Court] correct [in finding that] the General Assembly not only required consideration of a prospective adoptee's immigration status, but further made that status completely dispositive[,] compelling denial of the adoption petition with prejudice, when the General Assembly has already detailed the requirements necessary [to] comply with the Adoption Act, and the child's immigration status is not listed as a consideration nor is legal immigration status even deemed relevant in any way?

(5)   Did the Orphans' Court exceed its permissible jurisdiction when it imposed a punitive measure upon a child whose visa had expired, and precluded the child from pursuing adoption in the Commonwealth of Pennsylvania solely because of this status, when the [f]ederal [g]overnment has the exclusive authority over matters involving naturalization and immigration, and there is not a single shred of authority within this Commonwealth making immigration status even relevant, much less dispositive?

(6)   Did the Orphans' Court abuse its discretion when it determined that the [a]doption [p]etition was "[p]rocedurally [i]mproper," solely because [Child] had overstayed his visa, when the [p]etition perfectly complied with all requirements set forth in the Adoption [Act],

- 5 -

which[,] itself[,] does not require proof of immigration status?

(7) Was the Orphans' Court's decision to deny the adoption petition with prejudice without ordering a home study, conducting a hearing, making a record, taking evidence, conducting formal briefing on the docket, and permitting oral argument a violation of [Petitioners'] constitutional right to procedural due process?

(8) Did the Orphans' Court arbitrarily abuse its power by making [Child's] immigration status a controlling factor when there is no recognized legal authority for even taking immigration status into consideration when the prospective adoptive parents are family members, have formed a parental bond with [Child] over the preceding six years, and intend to bring [C]hild into status by filing a Family Petition after his adoption?

Petitioners' Brief, at 3-6.

When reviewing a decree entered by the [O]rphans' [C]ourt, the appellate court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [O]rphans' [C]ourt sits as the fact-finder, it determines the credibility of the witnesses, and on review, the appellate court will not reverse its credibility determinations absent an abuse of that discretion.

*In re E.M.I.*, 57 A.3d 1278, 1284 (Pa. Super. 2012).

Instantly, Child was born in Liberia and has been living in the United States since 2014 with an aunt and uncle who are naturalized, United States citizens. Therefore, Petitioners are seeking a domestic adoption[4] of a child

---

[4] While Petitioners are seeking to adopt a foreign-born child, this is not what is termed an "intercountry or international adoption." ***See*** ***https://www.uscis.gov/adoption/immigration-through-adoption*** (last visited 5/16/22) (defining intercountry adoption as "an adoption of a child born in one country by an adoptive parent living in another country"). Such adoptions are governed by United States federal law, the laws of the
*(Footnote Continued Next Page)*

who was born in a foreign country, utilizing the procedures set forth in our Commonwealth's Adoption Act. The factual circumstances in this case present a factual scenario of first impression—United States citizens seeking to adopt their foreign-born nephew, who has been residing with them in the United States on a non-immigrant visa and where there is no foreign adoption decree made or entered into in conformity with the laws of the child's home country.

We recognize that adoption in this Commonwealth is purely a statutory right. *In re Adoption of R.B.F.*, 803 A.2d 1195, 1199 (Pa. 2002). Pennsylvania's Adoption Act (Act) is codified at chapters 21 through 29 of the Domestic Relations Code.[5] *See* 23 Pa.C.S. §§ 2101-2938. It is well-established that the provisions of the Adoption Act must be strictly complied with, *In re Adoption of E.M.A.*, 409 A.2d 10, 12 (Pa. 1979) (citations omitted), but also that "[t]he law is not to be construed unreasonably and

_____

prospective adoptive child's country of origin, and the laws of the prospective adoptive parents' United States state of residence. *See* https://travel.state.gov/content/travel/en/Intercountry-Adoption/Adoption-Process/how-to-adopt.html (last visited 5/20/22).

[5] The Adoption Act was first referred to the Judiciary Committee on January 26, 1970. At that time, the short title of the proposed Act stated that it was:

> [a]n Act providing for the adoption of minors and adults and for the termination of parent-child relationships by such adoption or by relinquishment or abandonment proceedings preliminary thereto, for jurisdiction of courts, for recording of foreign decrees of adoption, and containing provisions for procedures, decrees and records in all matters relating thereto.

S.B. 1233 (1970).

thus defeat the express purposes of the Act." ***See In re Russell Adoption Case***, 85 A.2d 878, 883 (Pa. Super. 1952).

Notably, the Adoption Act is silent with regard to an adoptee's citizenship or immigration status.[6] Moreover, the Act does not define the term "child"[7] or "foreign born child." ***See In re Adoption of Hess***, 608 A.2d 10, 13 (Pa. 1992) ("Wherever possible, we must be guided by the specifications of the Adoption Act in making our determination."). Our Supreme Court has stated that the plain language of a statute is, in general, the best indicator of legislative intent. ***In re Adoption of J.A.S.***, 939 A.2d 403 (Pa. Super. 2007). Moreover, "[w]e must construe words and phrases in the statute according to their common and approved usage. We must also construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage." ***Id.*** at 405-06 (citations omitted).

---

[6] We agree with Petitioners that Child's immigration status is not before us, but, rather is a consideration for United States State Department and Bureau of Citizenship and Immigration Services under federal immigration law. Moreover, Liberian law is also not to be considered when faced with a prospective Commonwealth adoption under the Act.

[7] In its earliest form, the Adoption Act defined the term "child." However, that definition was deleted in 1980. ***See*** H.B. 213 (1979-80) (deleting term "child" defined in Act as a "son or daughter whether by birth or adoption who is under the age of eighteen").

Under the Act, adoption proceedings may be brought in the county where the adoptee resides. 23 Pa.C.S. § 2302(1).[8] Moreover, "[a]ny individual may be adopted, regardless of his age or residence." *Id.* at § 2311. While the court of common pleas of each county exercises original jurisdiction over adoption proceedings, *see* 23 Pa.C.S. § 2301, "[t]he courts have no authority to decree an adoption in the absence of statutorily required consents[. Moreover, no] exceptions to the Adoption Act [may] be judicially created where the legislature did not see fit to create them." *In re Adoption of Baby Boy D*, 769 A.2d 508, 509 (Pa. Super. 2001) (citations omitted).

Section 2908 of the Act concerns registration of a foreign adoption decree in the Commonwealth, stating, in relevant part, that,

> When a minor is adopted by a resident of this Commonwealth **and a final decree of adoption is made or entered in conformity with the laws of a foreign country**, the adopting parent shall file a properly authenticated copy of the foreign decree of adoption, a copy of the child's visa[,] and either the child's birth certificate or some form of birth identification with the clerk of the court in the county of residence of the parent.

_____

[8] An adoption proceeding may also be initiated in the county where the persons who have filed a report of intention to adopt, "required by section 2531," reside. 23 Pa.C.S. § 2302(1). Here, because Child is Petitioners' nephew, they were not required to file a report of intention to adopt, *see id.* at § 2531(c); however, Petitioners chose to file a report anyway.

23 Pa.C.S. § 2908(a) (emphasis added).[9]  Instantly, the trial court opined that Petitioner's "failure to comply with [section] 2908 [of the Adoption Act] not only would necessitate an impermissibly, judicially created exception to that statutory provision, but would require the court to exercise jurisdiction which it does not retain."  Trial Court Opinion, 9/16/21, at 4.  The trial court concluded that, because section 2908 involves the situation where a foreign-born child is being adopted by a Commonwealth resident, the Orphans' Court did not have jurisdiction to entertain their petitions unless Petitioners complied with section 2908's statutory prerequisites.  Specifically, the court found that because section 2908 presupposes a foreign adoption decree, unless and until Petitioners obtained a Liberian adoption decree for Child, it did not have the authority under the Adoption Act to consider Petitioners' filings.  We disagree.

In addition to section 2908, the Pennsylvania Supreme Court also has enacted procedural rules specifically addressing the adoption of foreign-born children by Commonwealth residents—specifically, Chapter XV of the Supreme Court's Orphans' Court Rules.  **See** Pa.R.O.C.P.15.1-15.9.  Those rules set forth the procedure in cases where a foreign adoption decree has been "made or entered in conformity with the laws of a foreign country,"[10] or where

_____

[9] "[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law."  **In re Adoption of R.A.B.**, 153 A.3d 332, 334 (Pa. Super. 2016).

[10] Pursuant to Pa.R.O.C.P. 15.8(c), if the foreign adoption decree can be registered, the court shall sign the decree, direct the clerk of court to enter
*(Footnote Continued Next Page)*

Commonwealth residents are seeking to adopt a foreign-born child who has entered the United States on an immigrant visa.[11]  **See** Pa.R.O.C.P. 15.8 (Foreign adoption registration) ("Adopting parent(s) may petition the Court of Common Pleas in the county of their residence to register a foreign adoption decree so that it will be given full and final effect in this Commonwealth."); **see also** Pa.R.O.C.P. 15.9(a) ("Adopting parent(s) who are residents of the Commonwealth may petition the Court of Common Pleas in any county as provided in [s]ection 2302 of the Adoption Act . . . to proceed with an adoption of their foreign[-]born child who has entered the United States pursuant to an

_____

the date of the foreign adoption decree, identify the foreign court on the docket, send Form No. HD01273F (certificate of foreign-born child) and form No. HD01275F (statement of citizenship and residency) to the Department of Health, Division of Vital Records, along with a copy of US Government Form N-560 (certificate of citizenship) and/or a copy of the child's United States passport, if they have been provided by adopting parents.  Pa.R.O.C.P. 15.8(c).  In return, the clerk shall issue the adopting parents a certificate of adoption in accordance with section 2907 of the Adoption Act.  **See** 23 Pa.C.S. § 2907 (certificate of adoption).

[11] "A foreign[-]born child who has been issued an IR-2, IR-3 or IH-2 United States Visa has had the adoption proceeding fully completed in the foreign country and the foreign adoption decree needs only to be registered here to be given full force and effect of an adoption decree issued by this Commonwealth."  **See In re Order Amending Rule 1.5 & Rescinding & Replacing Rules 15.1 through 15.9**, **supra** at *63.

IR-2, IR-3, IH-3, IR-4[,] or IH-4[12] United States visa.").[13]  Section 2908 of the Act codifies the procedure to register a foreign adoption decree in the Commonwealth with the goal of streamlining the process of obtaining the "full force and effect of an adoption decree issued by this Commonwealth."[14]  ***In re Order Amending Rule 1.5 & Rescinding & Replacing Rules 15.1 through 15.9***, 2021 Pa. LEXIS 3160, *60 (Pa. 2021).

Neither of those situations is present here.  Petitioners admit that they did not commence or complete a foreign adoption proceeding in Liberia and, thus,

_____

[12] IR-2, IR-3, IH-3, IR-4, and IH-4 visas are immigrant visas adopted children may receive.  ***See*** https://www.uscis.gov/adoption/bringing-your-internationally-adopted-child-to-the-united-states/your-new-childs-immigrant-visa/your-new-childs-immigrant-visa (last visited on 5/13/22).  All children with these types of visas are admitted as permanent resident noncitizens.  ***See*** https://www.uscis.gov/adoption/after-your-child-enters-the-united-states (last visited 5/13/22).  In most instances, the adopting parent(s) of a foreign-born child who has entered the U.S. with an IR-2, IR-3 or IH-3 United States visa will not need to proceed under Rule 15.9, but can register the foreign adoption decree pursuant to Rule 15.8.  ***See In re Order Amending Rule 1.5 & Rescinding & Replacing Rules 15.1 through 15.9***, ***supra*** at *27, ***but see id.*** (if foreign-born child enters U.S. with IH-4 or IR-4 United States visa, adopting parents must proceed under Rule 15.9 because adoption of foreign-born child was not finalized in country of child's birth).

[13] In fact, the "Certificate of Adoption of a Foreign-Born Child (Pursuant to 23 Pa.C.S. § 2908)" attached to Petitioners' petition to adopt, asks for information listed in either the "Petition to Register Foreign Adoption Decree or Petition for Adoption of a Foreign[-]Born Child."  ***See*** Certificate of Adoption of Foreign-Born Child, at Part 2.

[14] ***See                also*** https://www.lancasterlawblog.com/2018/08/articles/authors/holly-filius/registration-of-foreign-adoption-decrees-goodbye-re-adoption-maybe/ (last visited 5/26/22).

have no foreign adoption decree to be registered in the United States. Moreover, Petitioners claim that Child entered the United States on a B-2 visa, not an IR-2, IR-3, IH-3, IR-4, or IH-4 visa. Therefore, neither Rules 15.8 and 15.9, nor section 2908, applies to the instant case. The relevant question, then, is whether Child can be adopted by Petitioners in the Commonwealth using the regular adoption procedure outlined in the Act, where the Act is silent as to the unique facts of the instant case.[15] We believe that Petitioners can avail themselves of the process, especially where we consider the best interests of Child who is currently in a state of "limbo*." See In re Russell Adoption Case*, *supra* at 881 (acknowledging that Act, as originally enacted in 1925, "provides that if the court is satisfied that the welfare of the person proposed to be adopted will be promoted by such adoption it shall make a decree so finding").

_____

[15] In **In re Adoption of R.A.B.**, **supra**, our Court reiterated:

> The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

**Id.** at 334.

Under Rule 15.8, if the trial court "determines that a foreign adoption decree [of a foreign-born child] cannot be registered, **the adopting parent(s) shall proceed as applicable under the provisions set forth in the Adoption Act, 23 Pa.C.S. § 2101**, *et seq.*, Pa.[R.]O.C.[P.] 15.9 (specific to the adoption of a foreign[-]born child),[16] and local rules of court." ***See In re Order Amending Rule 1.5 & Rescinding and Replacing Rules 15.1 through 15.9***, ***supra*** at *59 (emphasis added).[17] Thus, the Supreme Court did contemplate a situation where a child born in a foreign country, with no registerable foreign adoption decree (and, thus, unable to proceed under section 2908), could still be adopted under an alternative process set forth in

_____

[16] Moreover, prospective adoptive parents proceeding under Rule 15.9 are required to file twelve documents with the clerk of the appropriate division of the trial court, in this case the Orphans' Court Division. ***See*** Pa.R.O.C.P. 15.9(b). The Rule also requires proof that the child to be adopted is an orphan. ***Id.*** at 15.9(e).

[17] In January 2016, the Orphans' Court Procedural Rules Committee published their plan to propose to the Supreme Court of Pennsylvania that Pennsylvania Orphans' Court Rules 15.1 through 15.9 be rescinded and replaced "with new Chapter XV rules governing Adoptions." 231 Pa. Code Part II. On July 22, 2021, just one month before the Orphans' Court judge handed down the instant decree, the Supreme Court Rules Committee ordered that Pennsylvania Orphans' Court Rules 15.1 through 15.9 be rescinded and replaced by Rules 15.1 through 15.22. Orphans' Court forms 15.6, 15.8, and 15.9 were also rescinded. Rules 15.7 and 15.8 have been renumbered 15.14 and 15.15, respectively. ***See In re Order Amending Rule 1.5 & Rescinding and Replacing Rules 15.1 through 15.9***, ***supra***. "With a few exceptions . . . [current] Rule 15.15 is nearly identical to former Rule 15.9. Changes generally reflect style, use of defined terms, and an effort to achieve consistency across the Orphans' Court Rules. Current Rule 15.15." 51 Pa.B. 4313.

the Adoption Act.  Accordingly, we do not find legal support for the trial court's conclusion that the Petitioners cannot avail themselves of a domestic adoption of Child under the Act, exclusive of section 2908.

While we echo the trial judge's concerns about protecting the rights of biological and adopting parents and regulating the adoption process of foreign-born children who have no foreign adoption decrees, we cannot lose sight of the preeminent focus in adoption proceedings—the best interests of the child.  **See Hess**, **supra** at 13 (at all stages of adoption proceedings, best interest of child is paramount consideration).  Here, Child has been cared for in the United States by Petitioners, blood relatives, for more than six years. Child's parents have consented to Petitioners adopting Child and, concomitantly, relinquished all parental rights to him.  Petitioners have attempted to comply with the procedures required for prospective adopting parents under the Act, 23 Pa.C.S. §§ 2302(1), 2302, 2502(a),[18] 2531(a),

---

[18] In **In re J.W.B.**, 232 A.3d 689 (Pa. 2020), our Supreme Court explained:

> Pennsylvania's Adoption Act provides two mechanisms by which to obtain the consent of a parent for the adoption of his or her child.  Sections 2501 and 2502 provide that a natural parent may file a petition to relinquish his or her parental rights to a child to an agency or an adoptive adult, respectively.  **See** 23 Pa.C.S. §§ 2501-02.  Upon the filing of a petition under either Sections 2501 or 2502, the trial court sets a hearing to terminate the petitioning parent's parental rights.  23 Pa.C.S. § 2503.

> Where a parent has not filed a petition to relinquish his or her parental rights, [s]ection 2504 provides an alternative means to

*(Footnote Continued Next Page)*

2535(a), 2711, in fact filing some documents and requesting procedures not even required of blood relatives. *See* 23 Pa.C.S. § 2531(c) (report of intention to adopt Child not required to be filed "when child is the . . . niece or nephew by blood"); *id.* at §2535(a) ("When a report **required by section 2531** [] has been filed, the court shall cause an investigation to be made and a report be filed by . . . an appropriate person designated by the court.").[19]

As a reviewing court we are unable to determine whether the court's factual findings are supported by the evidence where no evidentiary hearing took place on the consent and adoption petitions and, thus, no credibility determinations were made. *In re E.M.I.*, *supra*. Therefore, we are compelled to reverse and remand.

Under the Act, once Petitioners filed their petition to confirm birthparents' consents and petition to adopt Child, the court should have issued Petitioners

_____

obtain parental consent to adoption. Pursuant thereto, when a natural parent has executed a consent to adoption, the adoptive parent may petition the court for a hearing to confirm the natural parent's consent to adoption. *See* 23 Pa.C.S. § 2504(a). The court will then schedule a hearing to confirm the consent that the parent previously gave to the adoption. 23 Pa.C.S. § 2504(b).

*Id.* at 692. Section 2711 of the Adoption Act sets forth the content, form and validity of the consents necessary for a Commonwealth adoption. *Id.*

[19] As mentioned, because Petitioners are Child's aunt and uncle, they were not required to file a report of intention to adopt. *See id.* at § 2531(c). Thus, if no report was required, then no mandatory investigation to determine the suitability of the proposed placement is triggered. *Id.* at § 2535(a). However, Petitioners specifically requested that the court conduct a home-study/investigation into Child's residence and relationship with Petitioners.

notice of a hearing as prescribed in section 2531 and in compliance with 23 Pa.C.S. §§ 2721-2725. Thus, upon remand the Orphans' Court shall give notice of and conduct such a hearing.[20] However, prior to the hearing and within 20 days of the case being returned to the Orphans' Court, the court shall direct a full investigation and a report be filed with regard to matters outlined in section 2535(b). *See* 23 Pa.C.S. § 2535(a)-(b).[21] The court shall designate the appropriate person or agency to conduct the investigation, *see id.* at § 2535(a), and may establish the procedure for the payment of investigation costs. *Id.* at § 2535(c).

Decree reversed. Case remanded in accordance with the dictates of this decision. Jurisdiction relinquished.[22]

_____

[20] The hearing shall be held within 15 days of the date that the court receives the report following the full section 2535 investigation.

[21] The information gathered from this investigation and memorialized in the report shall be assessed to determine whether Child's best interests would be served by granting the petitions.

[22] Petitioners aver that they ultimately intend to "apply for immigration status adjustment" via a Family-Based Petition Process (FBPP). *See* 8 U.S.C. § 1101(b)(1)(E)(ii). FBPP "provides a third avenue through which an adopted individual is considered the child of their adopting parent(s) for immigration purposes." https://www.uscis.gov/adoption/immigration-through-adoption/family-based-petition-process (last visited 5/26/22). Before a child will be considered an adoptive parent's "child for purposes of immigration benefits," under the FBPP, "[t]he adoptive parent must have evidence of a full and final adoption and satisfy the 2-year legal custody and joint residence requirements." *See id.* In order to fulfill the joint custody requirement, "legal custody must have been the result of a formal grant of custody from a court or other governmental entity." *Id.* Finally, under FBPP, Child's adoption be finalized before his sixteenth birthday. *See id.*; *see also* Appellants' Brief, at
*(Footnote Continued Next Page)*

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 6/16/2022*

---

46-47.  Child will be sixteen years old in less than two months.  We urge the trial court to consider the fact that time is of the essence when proceeding with the investigation and subsequent hearing to determine whether confirmation of the consents and adoption is proper.