## In re ADOPTION OF Baby Boy D., Appellee.

### Appeal of: J.M. and R.M., Preadoptive Parents.

Superior Court of Pennsylvania.

Argued Jan. 3, 2001.

Filed Feb. 21, 2001.

Reargument Denied April 19, 2001.

Samuel C. Totaro, Bensalem, for appellants.

Gail F. Miller, Jenkintown, for Baby Boy D. appellee.

Craig B. Bluestein, Jenkintown, for C.P. and R.P., appellees.

Before EAKIN, ORIE MELVIN and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellants, J.M. and R.M., appeal the July 21, 2000 Order denying their peti-

tion to confirm the consent of appellee, L.D., to their adoption of her son, Baby Boy D., and to terminate her parental rights based on the consent. On appeal, appellants contend the trial court erred in not applying Nevada law to the revocation of L.D.'s consent to the adoption.

¶2 On September 6, 1999, L.D. gave birth to Baby Boy D. while incarcerated in Las Vegas, Nevada. L.D. agreed to the adoption of her son by appellants, who are residents of Montgomery County, Pennsylvania. On September 10, 1999, L.D. executed both Pennsylvania and Nevada consent to adoption forms and the supporting papers.[1] Appellants returned to Pennsylvania with Baby Boy D. and, thereafter, filed a Report of Intention to Adopt and a petition to confirm the consent of L.D. pursuant to the Pennsylvania Adoption Act, 23 Pa.C.S.A. §§ 2101–2910. In December 1999, L.D. notified the court she wished to revoke her consent to appellants' adoption of her son, alleging she did not understand the legal ramifications of signing the documents. Appellants filed a petition for the involuntary termination of L.D.'s parental rights based upon her execution of the Nevada consent to adoption. Thereafter, C.P. and R.P., Baby Boy D.'s grandparents, filed a custody complaint and a petition for permission to intervene in the proceedings. The court granted the

grandparents permission to intervene and stayed the custody proceedings pending the determination of the adoption issues. On July 21, 2000, following the court's consideration of the parties' depositions, submitted in lieu of oral testimony before the court, the court denied appellants' petition to confirm the consent of L.D. and found valid her revocation of consent to the adoption.[2] This timely appeal followed.

¶3 On appeal, appellants present one issue for our review, "Whether the revocability of a consent to adoption signed under the laws of the state of Nevada should be decided under Nevada law, and accepted for filing in the Pennsylvania adoption proceedings as evidence of termination of parental rights." (Appellants' brief at 4.)

¶4 The Adoption Act sets forth specific procedures that must be followed by a party seeking to adopt a child.

To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with. Our courts have no authority to decree an adoption in the absence of the statutorily required consents. Nor may exceptions to the Adoption Act be judicially created where the Legislature did not see fit to create them.

---

1. Pursuant to Nevada law, the execution of a written consent to a specific adoption or a relinquishment for adoption is irrevocable. N.R.S. § 127.080, **Consent to specific adoption or relinquishment for adoption cannot be revoked or nullified; exceptions,** (1)(2). In Pennsylvania, the consent can be revoked until such time as either a decree of termination of parental rights or adoption is entered. 23 Pa.C.S.A. § 2711, **Consents necessary to adoption,** (c), **Validity of consent.**

2. At the time of oral argument in this matter it was indicated to this Court that a petition to involuntarily terminate L.D.'s parental rights was filed on December 23, 1999 and amended

on January 31, 2000. The trial court had not addressed said petition at the time of this appeal. We recognize that only when an involuntary termination of a parent's parental rights to a child occurs will the consent of that parent not be required for a valid adoption to occur. 23 Pa.C.S.A. § 2714, **When consent of parent not required.** Based upon the record before us, we make no finding on the petition to involuntarily terminate parental rights and leave such decision to the trial court upon return of the record of this case and after a hearing on that petition should it be pursued by appellants.

*In re Adoption of Stickley,* 432 Pa.Super. 354, 638 A.2d 976, 980 (1994) *citing In re Adoption of E.M.A.,* 487 Pa. 152, 409 A.2d 10 (1979).

¶ 5 Section 2711 of the Adoption Act provides in relevant part:

No consent shall be valid if it was executed prior to or within 72 hours after the birth of the child. A putative father may execute a consent at any time after receiving notice of the expected or actual birth of the child. Any consent given outside this Commonwealth shall be valid for purposes of this section if it was given in accordance with the laws of the jurisdiction where it was executed. A consent to an adoption may only be revoked prior to the earlier of either the entry of a decree of termination of parental rights or the entry of a decree of adoption. The revocation of consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished.

23 Pa.C.S.A. § 2711, **Consents necessary to adoption, (c), Validity of consent.**

¶ 6 Pursuant to section 2502, **Relinquishment to adult intending to adopt child,** and section 2504, **Alternative procedure for relinquishment,** when a parent consents to an adoption he or she can petition for permission to relinquish forever all parental rights or, if the petition is not filed within forty (40) days, the intermediary or party intending to adopt the child may petition for a confirmation of the parent's intent to relinquish parental rights. Only when the consent is confirmed may the court terminate parental rights and proceed to the adoption provisions under section 2901, **Time of entry of decree of adoption,** and 2902, **Requirements and form of decree of adoption.**

¶ 7 In determining whether to apply Pennsylvania or Nevada law to L.D.'s revocation of her consent to the adoption, the trial court reviewed cases annotated in the Restatement (Second) of Conflicts of Law § 289, **Law Governing Adoption,** which states "A court applies its own local law in determining whether to grant an adoption." In its Opinion, the trial court concluded:

[W]e find that an out-of-state consent may be filed in this Commonwealth in conjunction with an adoption proceeding as long as it was given in accordance with the laws of the other jurisdiction; however, the same "valid" consent is still subject to revocation under Pennsylvania law until such time as a decree of termination or adoption is entered. Otherwise stated, although a consent will be deemed initially to be valid or not upon consideration of the law of the other jurisdiction, the issue of revocation if it arises must be decided by reference to Pennsylvania law.

(Trial Court Opinion, Ott, J., 7/21/00, at 20–21.)

¶ 8 The court's discussion of *In re Adoption of a Child by T.W.C.,* 270 N.J.Super. 225, 636 A.2d 1083 (1994), is analogous to our resolution of the issues herein. In *T.W.C.,* the mother, a New York resident, placed her newborn son for adoption by a New Jersey couple, who commenced an adoption proceeding in New Jersey. After the 45–day period for revocation under New York law expired, the mother gave notice to the New Jersey court that she revoked her consent to the adoption. The trial court determined that New Jersey had jurisdiction and that New Jersey law applied. The result was that the adoption was denied and the child was returned to the mother. On appeal, the New Jersey Superior Court affirmed the trial court's Order and stated:

The Family Part correctly held that New Jersey law was to be applied. The Restatement (Second) of Conflicts of

Law, § 289 (1971) states the sound and generally applied rule: "A court applies its own local law in determining whether to grant an adoption." That rule properly recognizes the dominant interest of the forum state in fixing the prospective adoptive child's status and relationships. As already discussed, a state can only assert original adoption jurisdiction if it has a significant relationship with the child; indeed, the UCCJA [Uniform Child Custody Jurisdiction Act] and PKPA [Parental Kidnapping Prevention Act] are designed to assure that original jurisdiction is in the state where "the child and his family have the closest connection." The very same considerations that permit the exercise of jurisdiction support the use of the law of the forum. If a state properly exercises jurisdiction over the adoption, it should not ordinarily be expected or required to apply the law of a foreign jurisdiction in deciding the issues.

*T.W.C.,* 636 A.2d at 1090 (citations omitted).

■ ¶ 9 Applying the rationale of *T.W.C.,* we conclude Pennsylvania has the overriding and continuing interest in establishing Baby Boy D.'s status and relationships. When the consents were executed in Nevada, the parties were aware the adoption would be finalized in Pennsylvania. Furthermore, appellants and Baby Boy D. are residing in Pennsylvania and appellants chose to avail themselves of the laws of Pennsylvania by filing a report of their intention to adopt the child with the lower court. The problems presented in a bifurcated proceeding might have been avoided in this case had the adoption been pursued in its entirety under Nevada law. Because appellants elected to finalize adoption in Pennsylvania, it is not feasible or reasonable to subject the most critical and important

aspect of the adoption proceeding, termination of parental rights, to a foreign jurisdiction, which has less stringent safeguards to the biological parent than Pennsylvania. This increasingly becomes a cause for concern when we witness "internet adoptions", which are capable of eliminating carefully designed legislative and regulatory procedures to assure the best interest of the child and the protection of the rights of biological and adopting parents, and to guard against the sale of children.

¶ 10 In addition, we recognize the public policy considerations present in this case. Nearly 50 years ago, in *Adoption of Harvey,* 375 Pa. 1, 99 A.2d 276 (1953), the Pennsylvania Supreme Court attended to the judicial philosophy to be applied in adoption cases.

> Proceedings for the adoption of a child must be carefully differentiated from those involving merely a question of its custody; they are of far greater import and involve more serious consequences. Custody may be awarded for a more or less temporary duration, but a decree of adoption terminates forever all relations between the child and its natural parents, severs it entirely from its own family tree and engrafts it upon that of its new parentage. For all purposes, legal and practical, the child thenceforth is dead to the mother who gave it birth; she has lost the right ever to see her child again or even to know of its whereabouts. Because, therefore, of these direful results of an adverse adoption proceeding the rights of the natural parent should not be terminated unless the record clearly warrants such a decree.

*Id.* at 3–4, 99 A.2d at 277–78 (citations omitted). In Nevada, however, "public policy demands that the adoption act should not be nullified by a decision that causes the public to fear the consequences

of adopting a child with the full knowledge that their efforts are at the whim and caprice of a natural parent." *Ex parte Schultz,* 64 Nev. 264, 273, 181 P.2d 585, 589 (1947). While we may agree with the sentiment of Nevada law, that the procreation and nurturing of children are placed above the emotions and impulses of the adults involved, we find the application of Pennsylvania law in this case achieves the objectives and fulfills the policy of the legislature in enacting section 2711 of the Pennsylvania Adoption Act.

¶ 11 In light of the foregoing discussion, we find the trial court properly applied Pennsylvania law to the consent to adoption forms and that L.D.'s revocation of her consent to the adoption of her son is valid.

¶ 12 Order affirmed.