**E.T.S., Appellant**

v.

**S.L.H., Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2012.

Filed Sept. 28, 2012.

Christopher J. Reed, York, for appellant.

James P. Helvy, Harrisburg, for appellee.

BEFORE: STEVENS, P.J., BENDER, J., and GANTMAN, J.

OPINION BY STEVENS, P.J.

E.T.S. (hereinafter "Boyfriend") appeals from the Order entered on February 29, 2012, in the Court of Common Pleas of Adams County sustaining the preliminary objections of S.L.H. (hereinafter "Adoptive Mother"), the adoptive mother of K.H. (born in May of 2006) and K.M.H. (born in August of 2007) (hereinafter "the Children"), and holding that Boyfriend has no standing to seek physical or legal custody of the Children, pursuant to 23 Pa.C.S.A. § 5326. Upon our review of the record, we affirm.

The parties do not dispute the facts relevant to our disposition of this case. In 2003, Boyfriend and Adoptive Mother began living together. Adoptive Mother is the biological maternal great-aunt of the Children, and in May of 2009, Adoptive Mother and Great–Grandmother began exercising shared physical and legal custody of the Children. In October of 2010, the biological mother of the Children executed her consent to the adoption of the Children. In August of 2010, Adoptive Mother filed a petition for the involuntary termination of biological father's parental rights, which the trial court granted in November of 2010.

On February 14, 2011, Boyfriend proposed marriage to Adoptive Mother, which she rejected. Shortly thereafter, Boy-

friend moved out of Adoptive Mother's home. On April 18, 2011, the trial court terminated biological mother's parental rights pursuant to her consent to the adoption of the Children. On May 25, 2011, the court awarded custody of the Children to Adoptive Mother.

On July 29, 2011, Boyfriend filed a custody complaint seeking shared physical custody and shared legal custody of the Children. Boyfriend avers *in loco parentis* standing regarding the Children during his time as Adoptive Mother's live-in boyfriend. On August 16, 2011, Adoptive Mother filed preliminary objections to Boyfriend's complaint for custody asserting that Boyfriend had no relationship to the Children, never assumed the obligations of parenting, and lacked standing to seek custody of the Children. Adoptive Mother's Preliminary Objections, filed 8/16/11. The trial court noted that, "[i]n briefs to this [c]ourt, both parties allege facts tending to prove or disprove Boyfriend's *in loco parentis* status. The parties agree that Boyfriend has had no contact with the [C]hildren post-adoption." Trial Court Opinion, 2/29/12, at 7.[1]

On February 29, 2012, the trial court entered its Order sustaining Adoptive Mother's preliminary objections and holding that any rights Boyfriend may have established prior to the adoption of the Children by virtue of his alleged *in loco parentis* relationship with the Children were terminated upon the adoption of the Children. On March 29, 2012, Boyfriend timely filed his notice of appeal and simultaneously filed his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief, Boyfriend presents four questions for our review:

A. Did the Trial Court err in holding Appellant lacked standing to seek custody of the Children?

B. Did the Trial Court err in holding that the common law doctrine of *in loco parentis* is abrogated by Title 23 Chapter 53 of the Pennsylvania Code?

C. Did the Trial Court err in its application of 23 Pa.C.S. § 5326 by applying the provisions of § 5326 to all individuals granted standing to seek custody under Pa.C.S. [sic] § 5324?

Did the Trial Court err in finding the language of 23 Pa.C.S. § 5326 to be free of ambiguity, and by failing to apply the principles of statutory construction under 1 Pa.C.S. § 1921?

Boyfriend's Brief at 4.

Initially we note that the new Child Custody Act became effective on January 24, 2011. *See* 23 Pa.C.S.A. § 5321, *Credits* (stating the effective date of the new Custody Act is January 24, 2011). Because Boyfriend filed his Complaint for Custody on July 29, 2011, the new Custody Act is applicable herein. All of Boyfriend's issues turn on the trial court's interpretation and application of 23 Pa.C.S.A. §§ 5324 and 5326. Accordingly, we address them together.

▪ In a case presenting a question of law, our standard of review is *de novo,* and our scope of review is plenary. *P.T. v. M.H.,* 953 A.2d 814, 817 (Pa.Super.2008). In interpreting statutory intent, our Supreme Court recently held:

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all

---

1. The trial court, in its Opinion filed pursuant to Pa.R.A.P.1925(a) and dated April 5, 2012, fully incorporates its Opinion dated February 29, 2012, as its Rule 1925(a) opinion. Trial Court Opinion, 4/5/12, at 1 (unpaginated).

its provisions." 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of legislative intent, *Commonwealth v. McCoy*, 599 Pa. 599, 962 A.2d 1160, 1166 (2009), and the words of a statute "shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903(a). We generally look beyond the plain language of the statute only where the words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922; *see also Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100, 1106 (2009). When, however, "the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters": the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes upon the same or similar subjects; the consequences of a particular interpretation; the contemporaneous legislative history; and the legislative and administrative interpretations of such statute. 1 Pa. C.S. § 1921(c). Also, we may look to statutory titles and headings, 1 Pa.C.S. § 1924, and if considering statutes *in pari materia*, we may consider how particular statutes addressing the same persons, things, or subject matter are grouped together within respective chapters, titles, and sections. 1 Pa.C.S. § 1932.

*Commonwealth v. Garzone*, —— Pa. ——, 34 A.3d 67, 75 (2012).

■ Central to the questions presented in this case are sections 5324 and 5326 of the Custody Act. Section 5324 reads as follows:

### § 5324. Standing for any form of physical custody or legal custody

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

23 Pa.C.S.A. § 5324.

Section 5326 provides, in pertinent part:

### § 5326. Effect of Adoption

Any rights to seek physical custody or legal custody rights and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent prior to the adoption of the child by an individual other than a stepparent, grandparent or great-grandparent shall be automatically terminated upon such adoption....

23 Pa.C.S.A. § 5326.

In the present case, Boyfriend acknowledges that where, as here, a child is adopted by an individual other than a stepparent, grandparent, or great-grandparent, section 5326 acts to extinguish the rights of certain individuals to seek custody of that child. Boyfriend's Brief at 16. Boyfriend, however, argues that the language of section 5326 acts to terminate only the custody rights of grandparents and great-grandparents, while preserving the rights granted to non-grandparents. *Id.* at 16–17. In essence, Boyfriend's argument asserts that the phrase "to a grandparent or great-grandparent" applies to limit the termination of rights granted under both section 5324 and section 5325. *Id.*

The trial court determined that the language of section 5326 is unambiguous. Trial Court Opinion, 2/29/12, at 16. In its analysis, the trial court outlined its conclusion as to the effect of the statute as follows:

> [U]pon adoption, the statute terminates any custody rights that had been granted under section 5324 prior to the adoption of the child by an individual other than a stepparent, grandparent, or great-grandparent. Finally, upon adoption, the statute terminates any custody rights that had been granted under section 5325 to a grandparent or great-grandparent prior to the adoption of the child by an individual other than a stepparent, grandparent, or great-grandparent.

*Id.* at 15. The trial court, thus, interprets section 5326 as terminating all custody rights granted under section 5324, without regard as to whether the person seeking to assert those rights is a grandparent, in the situation where the child is adopted by an individual other than a stepparent, grandparent, or great-grandparent.

Following our Supreme Court's guidance concerning statutory interpretation and a review of the Custody Act as a whole, we conclude that the trial court's determination regarding the effect of section 5326 on custody rights granted under section 5324 is without error. The trial court's interpretation of this aspect of section 5326 comports with the plain language of the statute.

The first line of section 5326 references "Any rights to seek physical custody or legal custody rights." That phrase is followed by the conjunction "and" which precedes language concerning "any custody rights that have been granted under section 5324 ... or 5325 ... to a grandparent or great-grandparent prior to the adoption of the child...." The statute ends with a clear assertion that the aforementioned rights "shall be automatically terminated upon such adoption." As such, the words preceding "and" refer to "any rights," while those that follow pertain to those concerning a grandparent or great grandparent.

■ Moreover, we note that the trial court's reading of the statute is in harmony with the object to be attained by terminating custody rights upon a child's adoption. *See Garzone,* 34 A.3d at 75 (citing 1 Pa.C.S. § 1921(c)). As we have stated, "[a] decree of adoption terminates forever all relations between a child and his biological parents and severs the child entirely from its own family tree and engrafts it upon its new parentage." *In re Adoption of R.J.S.,* 889 A.2d 92, 100 n. 7 (Pa.Super.2005) (citing *In re Baby Boy Benjamin,* 452 Pa. 149, 305 A.2d 360 (1973)). Under both the former law and the current law, the legislature sought for adoptions by individuals other than an extremely limited group of close family members, specifically stepparents and grandparents, to dissolve permanently the child's formal relationship with his or her prior family.

Additionally, the former law supports this reading of section 5326. *See Garzone,* 34 A.3d at 75 (citing 1 Pa.C.S. § 1921(c)). The repealed law, 23 Pa.C.S.A. § 5314, stated:

> **§ 5314. Exception for adopted children**
>
> Sections 5311 (relating to when parent deceased), 5312 (relating to when parents' marriage is dissolved or parents are separated) and 5313 (relating to when child has resided with grandparents) shall not apply if the child has been adopted by a person other than a stepparent or grandparent. Any visitation rights granted pursuant to this section prior to the adoption of the child

shall be automatically terminated upon such adoption.

23 Pa.C.S.A. § 5314 (repealed 2011). Clearly, the former law, upon the adoption of a child by a person other than a stepparent or grandparent, acted to terminate the custody rights of all persons addressed in the specified subsections, including those of non-grandparents. Similarly, under our interpretation of section 5326, the effect of adoption by someone other than a stepparent, grandparent, or great-grandparent is to terminate the custody rights of all persons addressed in the specified subsections, including grandparents, great-grandparents, and parents, as well as the newly-codified rights of persons who stand *in loco parentis*.

Applying our interpretation of section 5326 to the present case, we find no error in the trial court's conclusion that Boyfriend lacks standing to seek custody of the Children. Boyfriend ultimately seeks to assert custody based upon his relationship with the Children prior to their adoption. Boyfriend's Brief at 5–7; Trial Court Opinion, 2/29/12, at 7. Section 5326 acts to terminate any custody rights granted prior to a child's adoption when that child is adopted by a person other than a stepparent, grandparent, or great-grandparent. The Children were adopted by their maternal great-aunt, and, as such, the exception does not apply.

Thus, under our interpretation of section 5326, any rights that may be conferred pursuant to Boyfriend's assertion of *in loco parentis* status prior to the adoption of the Children were terminated at the time of their adoption. Consequently, Boyfriend lacks standing to seek custody of the Children, and his primary issue on appeal is without merit.

As we hold that Boyfriend lacks standing to seek custody of the Children, we do not reach his remaining issues on appeal.

Accordingly, for the reasons stated above, we affirm the trial court's Order sustaining Adoptive Mother's preliminary objections and holding that Boyfriend lacks standing to seek physical or legal custody of the Children.

Order affirmed.