J-S17010-25 & J-S17011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: K.L., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 187 EDA 2025 |

Appeal from the Order Entered January 3, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000839-2015

| IN THE INTEREST OF: K.N.L., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 188 EDA 2025 |

Appeal from the Order Entered December 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000172-2017

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 2, 2025**

In these consolidated appeals, D.L. (Grandmother), maternal grandmother of K.L., a female born in March 2010 (Child), appeals from the juvenile court's orders denying her petition to adopt Child and dismissing her

custody complaint as moot.[1]  Additionally, Grandmother's counsel (Counsel) has filed **Anders**[2] briefs, which include documents entitled "Petition to Withdraw Appearance of Counsel."  After careful consideration, we grant Counsel's petitions to withdraw and affirm the orders.

As described by the juvenile court,

[o]n March 31, 2015, at five years old, [Child] came into [the custody of the Philadelphia Department of Human Services (DHS)].  [Child] was removed from the care of [T.B.][3] and [T.B.'s] mother, [R.B.P.]  [R.B.P.] was [Child's] legal guardian at the time.  [Child] lived with [T.B.], whom she referred to as "dad," and [R.B.P.] from shortly after birth until her removal from their care.  On August 3, 2015, [Child] was adjudicated dependent and fully committed to DHS.  [Dependency Order, 8/3/15, at 1.]  On March

_____

[1] At 187 EDA 2025, Grandmother appeals the juvenile court's order dismissing as moot her custody complaint.  At 188 EDA 2025, Grandmother appeals the juvenile court's order denying her petition for adoption.  We hereinafter refer to 187 EDA 2025 as the custody case, and 188 EDA 2025 as the adoption case.

[2] **Anders v. California**, 386 U.S. 738 (1967); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving termination of parental rights); **In re J.D.H.**, 171 A.3d 903, 906 (Pa. Super. 2017) (holding that the **Anders** procedure applies "in appeals from [permanency] goal change orders, even in the absence of an involuntary termination decree.").

[3] In a prior appeal, our Supreme Court explained that T.B. "claimed he had been a romantic partner and longtime friend of [C]hild's biological mother, as well as a live-in parental caregiver for [C]hild from the time she was four days old until her removal from [R.B.P.'s] home[.]" **Interest of K.N.L.**, 284 A.3d 121, 127 (Pa. 2022).  The **K.N.L.** Court further explained that the "initials 'T.B.' reflect the functional name of [T.B.], also known by 'L.B.'[,] corresponding to his legal name and sex assigned at birth." **Id.** at 127 n.3; **see also** Juvenile Court Opinion, 12/23/24, at 1 n.1 (the juvenile court noting that T.B.'s sex "was assigned female at birth[.]").

> 6, 2017, the parental rights of [Child's] biological mother[
> (biological mother)], putative father, and all unknown putative
> fathers were terminated. [Child] moved through numerous foster
> homes before being placed in her current foster home [with her
> foster mother, K.D. (Foster Mother).]

Juvenile Court Opinion, 12/23/24, at 1 (footnote in original omitted; one footnote added).

On October 24, 2018, following the termination of biological parents' rights to Child, S.G., Child's prior foster mother, filed a petition for adoption.[4] DHS did not consent to the adoption and sought to remove Child from S.G.'s care. In the interim, on May 6, 2019, D.M., Child's maternal aunt (Aunt), filed a motion to intervene, and, on June 19, 2019, filed a petition to adopt Child.[5] S.G. subsequently withdrew her petition for adoption. In November 2019, DHS placed Child with Foster Mother.

On December 12, 2019, T.B. moved to intervene in Aunt's adoption proceedings, and filed his own petition to adopt Child on January 3, 2020. On January 26, 2021, the matter proceeded to a hearing, after which the juvenile

---

[4] The certified record discloses that on March 26, 2019, biological mother sent correspondence to the Adoption Branch of the Philadelphia Court of Common Pleas' Family Division, objecting to Child's proposed adoption. Objection, 3/26/19, at 1-2 (unpaginated). In response, the Adoption Branch sent correspondence informing biological mother that her parental rights were terminated in 2017, and advising her to seek counsel "for further purposes regarding your intentions." Correspondence, 5/6/19, at 1. We observe that "[a] decree terminating all rights of a parent … entered by a court of competent jurisdiction shall extinguish the power or the right of the parent to object to or receive notice of adoption proceedings." 23 Pa.C.S.A. § 2521(a).

[5] Aunt filed an amended petition for adoption on February 26, 2020.

court denied T.B.'s motion to intervene for lack of standing. T.B. appealed and, ultimately, on October 19, 2022, our Supreme Court concluded "the juvenile court applied an incorrect analysis of [T.B.'s] standing to intervene in an adoption based on his asserted *in loco parentis* status, and therefore misapplied the law." ***K.N.L.***, 284 A.3d at 150. The ***K.N.L.*** Court remanded the matter for a hearing *de novo* on standing before a different judge. ***Id.*** at 151.[6]

In 2021, during the pendency of T.B.'s appeal, both T.B. and Grandmother filed *pro se* complaints seeking custody of Child. Pertinently, in her custody complaint, Grandmother averred that she had "the capacity and resources to provide for [C]hild[,]" and argued that Child "needs to be with her family who will give her the support she needs to grow into a respectable young adult." Custody Complaint, 11/3/21, at 4 (unpaginated).

On February 14, 2022, the juvenile court continued the custody matter pending the Supreme Court's decision in ***K.N.L.*** Order, 2/14/22. On March 25, 2022, Grandmother filed a counseled petition to intervene in Aunt and T.B.'s adoption proceedings. Therein, Grandmother averred that "[b]ecause

---

[6] Upon remand, the matter was transferred from the Honorable Daine Grey, Jr., to the Honorable Deborah L. Canty, who presided over all subsequent proceedings pertinent to this appeal. On May 28, 2024, at the conclusion of T.B.'s case-in-chief at the adoption/custody hearing, the juvenile court found that T.B. had previously stood *in loco parentis* to Child, and, consequently, had standing to seek custody and adoption of Child. ***See*** N.T., 5/28/24, at 329.

- 4 -

of the strong psychological and emotional bond between [G]randmother and [C]hild, it will … drastically affect the best interests of [C]hild if [C]hild is not allowed to be reunited with [G]randmother." Petition to Intervene, 3/25/22, at 2 (unpaginated). On January 19, 2023, Foster Mother filed a petition to adopt Child. On February 1, 2023, upon T.B.'s motion, the juvenile court consolidated the adoption and custody cases. Order, 2/1/23.

The juvenile court scheduled the matter for a contested adoption/custody hearing, which occurred in June and August 2023; and February, May, August, and October 2024. On February 20, 2024, the third day of the adoption/custody hearing, Grandmother filed the instant petition for adoption, which the juvenile court consolidated into the ongoing adoption/custody proceedings.

Numerous witnesses testified throughout the course of the adoption/custody proceedings, including, pertinently, Child; Foster Mother; DHS permanency caseworker Tierra Graves (Ms. Graves); Delta Family Services adoption finalization caseworker Erin Hagenbuch (Ms. Hagenbuch); and Grandmother.

Child, represented by separate legal counsel and a guardian *ad litem* (GAL), testified, *in camera*, on June 14, 2023, and February 20, 2024.[7] The juvenile court summarized Child's testimony as follows:

_____

[7] Child was thirteen years of age on the dates of her testimony, and fourteen years of age at the conclusion of the adoption/custody hearing.

On June 14, 2023, [Child] stated that she did not want to testify in front of [T.B.] or [Grandmother]. [Child] said that seeing them made her sad. She further elaborated that [Grandmother] was a stranger to her and that she just did not want to see [T.B.] … In the interest of fairness, all parties were asked to vacate the courtroom during [Child's] testimony. [Child] was brought back to testify a second time on February 20, 2024, to give all parties and counsel the opportunity to review the June 14, 2023[,] transcript of [Child's] testimony and allow for all counsel to re-examine [Child] …. On February 20, 2024, all parties were again asked to vacate the courtroom and only counsel was present for the second round of examination of [Child].

[Child] was consistent and clear in her testimony on both dates that she testified. [**Child**] **made it repeatedly clear, when asked by various people**[,] **both directly and in various iterations of the question,** [**that**] **she would only consent to being adopted by** [**Foster Mother,**] **and would not consent to adoption by** [**T.B., Aunt, or Grandmother**]. ***See*** N.T., 6/14/23, at 31, 38-40, 42, 47-48, 79, 84; N.T., 2/20/24, at 5, 9, 11-12, 16-17, 29-32, 43, 60, 64-66, 75. [Child] was also consistent in her communication with GAL, who spoke with [Child] several times, that she wished to be adopted by [Foster Mother] and not by any other party. ***See*** N.T., 8/13/24, 190-91. [Child] was also consistent about her wishes in communication[s] with … [Ms. Graves], and … [Ms. Hagenbuch], both of whom me[]t with [Child] on a regular basis. ***See id.*** at 20, 197.

Juvenile Court Opinion, 12/23/24, at 4-5 (citations modified; emphasis added).

Concerning Child's relationship with Foster Mother, the juvenile court accurately summarized Child's testimony as follows:

[Child] adamantly wants to be adopted by [Foster Mother]. ***See*** N.T., 6/14/23, at 39-40, 42, 47, 79-80, 84; N.T., 2/20/24, at 5, 16-17, 30-32, 43, 58, 66-67. [Child] explain[ed], "Being with [Foster Mother] is like no other thing in my life. And it makes me feel safe, loved, cared [for.]" N.T. (Vol. II), 2/20/24, at 66-67. [Child] has lived with [Foster Mother] for the past five years. [Child] loves where she lives, she is very happy, she feels safe,

loved, comfortable, and cared for. *See* N.T., 6/14/23, at 43, 47-48; N.T. 2/20/24 (Vol. II), at 43, 66-67. [Child] calls [Foster Mother] "mom." N.T., 6/14/23, at 40; N.T. 2/20/24 (Vol. II), at 5. [Child] feels that she is part of [Foster Mother's] family, including having sisters[, *i.e.*, Foster Mother's eight-year-old foster daughter (Z.) and adult biological daughter,] and extended family. *See* N.T., 6/14/23, at 39-41, 43, 79-80. [Child] feels that no one else has taken as good [] care of her as [Foster Mother] does. *See* N.T., 6/14/23, at 42.

*Id.* at 5-6 (citations modified; footnote omitted).

Foster Mother testified that she has cared for Child since November 2019. N.T., 8/13/24, at 40. Foster Mother explained that she has an adult daughter in college, with whom Child has bonded. *Id.* at 39-40, 44. Foster Mother testified that she and Child reside with Z. *Id.* at 59-60. Foster Mother explained that Child and Z. have "a good relationship. They call each other sisters." *Id.* at 60; *see also id.* (Foster Mother testifying that Child and Z. are "not very close in age. So [Child] really, really flexes the big sister title ….").

According to Foster Mother, although Child initially told Foster Mother that she anticipated being transferred to another foster home,[8] Foster Mother has observed Child's behavior and outlook improve significantly during her time in Foster Mother's care. *See id.* at 41, 68; *see also id.* at 49 (Foster

_____

[8] Child testified that she was in six different foster homes before being placed with Foster Mother. *See* N.T. (Vol. II), 2/20/24, at 55; *see also* N.T., 8/13/24, at 69 (Foster Mother testifying that Child told her that "[T.B.] comes to every foster home that [Child] goes to, and that's why [Child] has to move so much.").

Mother testifying that she takes Child to therapy sessions, and that therapy has "been going well."); *id.* at 67-68 (Foster Mother testifying that Child had detailed past sexual and physical abuse to Foster Mother).

Ms. Hagenbuch testified that she began working with Child in May 2022. *Id.* at 15. Ms. Hagenbuch explained that her duties include conducting monthly supervisory visits and home safety checks, collecting documentation, and making "sure that the family is ready for adoption." *Id.* at 16. According to Ms. Hagenbuch, Foster Mother has been cooperative, communicative, and proactive throughout Ms. Hagenbuch's supervision of the case. *See id.* at 16-17.

Ms. Hagenbuch testified that Child and Foster Mother "have good communication. They enjoy spending time together. [Foster Mother] has been … loving and affectionate, and reassure[s Child] of her safety in their home." *Id.* at 18; *see also id.* (Ms. Hagenbuch confirming that Foster Mother and Child have a parent-child relationship). Ms. Hagenbuch further testified that Child advised her that she desires to be adopted by Foster Mother, and that Ms. Hagenbuch had no information regarding Child's relationship with any other adoption or custody petitioner. *Id.* at 20, 23; *see also id.* at 24 (Ms. Hagenbuch opining that it would be in Child's best interest to be adopted by Foster Mother).

Ms. Graves testified as Child's permanency caseworker through DHS, indicating that Child attends individual therapy, and that all of Child's needs

are being met by Foster Mother. *Id.* at 11. Ms. Graves explained that, as one of her duties, she followed up with Child regarding Child's visits with T.B., Aunt, and Grandmother.[9] *See id.* at 12. According to Ms. Graves, Child declined to exercise periods of visitation with T.B., Aunt, or Grandmother. *Id.* Ms. Graves further confirmed her belief that Child's adoption by Foster Mother is in Child's best interest, and consented to Foster Mother's adoption of Child on DHS's behalf. *Id.* at 197-98.

Grandmother, represented by counsel, claimed that DHS failed to maintain contact with her or invite her to be involved in Child's life. *Id.* at 86. Grandmother agreed that she was willing and able to meet all of Child's long-term needs, and testified that Grandmother has "a lot of family supports." *Id.* at 88; *see also id.* at 87-88 (Grandmother testifying that Child "has like four brothers and … two sisters[,]" as well as "a lot of cousins."). *But see* N.T. (Vol. I), 2/20/24, at 175-77 (Grandmother testifying that she does not have a relationship with several of Child's siblings, and does not "even know where they a[re].").[10] Grandmother stated that she wished to adopt Child "[b]ecause

_____

[9] We observe that on August 28, 2023, the juvenile court granted T.B. and Aunt's motions for visitation with Child, to occur at Child's discretion. Orders, 8/28/23, at 1. The juvenile court's orders directed DHS to ask Child, on a weekly basis, whether she wished to have virtual visits with either T.B. or Aunt. *Id.* Grandmother did not file a similar motion, and the record reveals no order directing or authorizing visitation between Grandmother and Child.

[10] At the February 20, 2024, hearing, Grandmother testified on behalf of T.B., during T.B.'s case-in-chief. *See* N.T. (Vol. I), 2/20/24, at 155 (Grandmother
*(Footnote Continued Next Page)*

by [Child] being away from the family[, Child] would never know the history of the family, and that's very important." *Id.* at 92.

The juvenile court aptly summarized Grandmother's remaining testimony as follows:

> [Grandmother] provided credible testimony to the court. [Grandmother] has only seen [Child] twice: once when [Child] was two years old, prior to DHS involvement, and once when [Child] was nine years old. *See* N.T. (Vol. I), 2/20/24, at 178-179; N.T., 8/13/24, at 94-96[; *see also* N.T., 8/13/24, at 91 (Grandmother testifying that she had not seen Child because biological "mother wouldn't [] bring [Child] around.")]. [Grandmother] admitted she had not seen [Child] in a long time. *See* N.T. (Vol. I), 2/20/24, at 179.
>
> [Grandmother] never contacted [DHS] about being a resource for [Child]. *See* N.T., 8/13/24, at 146. … [Grandmother] concede[d] that when she was contacted by DHS about two of [Child's] siblings, [Grandmother] communicated to DHS that she [was] unable to be a placement resource for [Child's] siblings. *Id.* at 93-94. [Grandmother] did not learn that [Child] was in foster care until 2021. *See* N.T. (Vol. I), 2/20/24, at 174-75. [Grandmother] testified that neither [T.B.] nor [Aunt] mentioned to her that [Child] was in foster care prior to 2021. *Id.* at 178-80.
>
> [Grandmother] recognize[d] that [Child] has a strong relationship with [Foster Mother], that [Child] recognizes [Foster Mother] as her mother, and that [Child] feels safe, loved, protected, and happy in [Foster Mother's] home. *See* N.T., 8/13/24, at 101-02. [**Grandmother**] **supports** [**Child's**] **wish to remain with** [**Foster Mother**] **and be adopted by** [**Foster Mother**] **if that is what** [**Child**] **wishes**. *See* N.T. (Vol. I), 2/20/24, at 162-63.

---

agreeing that she was in support of T.B. adopting Child if Grandmother could not, "[b]ecause [T.B.] takes so much care. … [T.B.] takes better care[ of Child]. … I think [T.B.] can provide for [Child] better than I could.").

Juvenile Court Opinion, 12/23/24, at 10 (citations modified; emphasis added).

Finally, the GAL reported to the juvenile court Child's wishes, based on his conversations with Child:

> [Child] was very sure that adoption is the goal that [Child] would be interested in[,] and not any other permanency options. We discussed the fact that [Child's] consent would be required for adoption due to her age, and we broke it down by each individual [adoption] petitioner. [Child] was very clear that she would only consent to [Foster Mother] adopting her ….
>
> [Child] lives with [Z.], who[m] she identifies as being her sister. [Child] indicated that [Child and Z.] have a close relationship. And we talked about the possibility of if [Child] were removed from [Foster Mother's] home …. [Child stated s]he would be very sad if she were removed from [Foster Mother's] home, and she would miss [Foster Mother], [] who[m] she considers to be her mother, and [Z.] as well, that she would be upset that she would not be with her sister anymore.
>
> ….
>
> In terms of other relatives, like the maternal family, [Child's position] changed somewhat. So in the beginning of the case[, Child] indicated that she would be open to … visiting maternal family members. Recently, I asked [Child] about the same things, and [Child] now said that she absolutely did not want contact with those family members.

N.T., 8/13/24, at 191-92.

The GAL continued,

> [i]n terms of [Foster Mother's] home, [Child] gave me a tour of the home. [Child is] happy there. It's an appropriate home. [Child] enjoys the school she goes to very much and [Child is] doing well there, and I think [Child] should remain there. [Child is] getting therapy regularly. And I think … with [Child's] history, maintaining therapy is really, really important for [Child]. And so ultimately the recommendation that I would have for the [c]ourt is for [Foster Mother's] petition for adoption be granted.

*Id.* at 194.

At the close of the evidentiary hearings, the juvenile court scheduled argument for October 30, 2024. Pertinently, at the October 30, 2024, hearing, Grandmother primarily emphasized the importance of familial ties, arguing that "what's best for [Child] is to have access [to] and be part of the richness that is the vast family network that she has …." N.T., 10/30/24, at 42. After hearing argument from all parties, the juvenile court took the matter under advisement.

By order, and a thorough accompanying opinion entered on December 23, 2024, the juvenile court denied Grandmother, T.B., and Aunt's petitions for adoption, granted Foster Mother's petition for adoption, and dismissed Grandmother and T.B.'s custody complaints as moot.[11] Grandmother filed timely notices of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statements at each docket number. The juvenile court filed a statement in lieu of a Rule 1925(a) opinion, directing this Court to its December 23, 2024, opinion.

On March 17, 2025, Counsel filed **Anders** briefs at both dockets in this Court, but did not file separate petitions to withdraw as counsel. Counsel

---

[11] The juvenile court's order denying Grandmother's adoption petition was filed December 23, 2024; however, the order dismissing Grandmother's custody complaint, also dated December 23, 2024, was not docketed until January 3, 2025.

instead included within her ***Anders*** briefs documents entitled, "Petition to Withdraw Appearance of Counsel." ***See Anders*** Brief (adoption case) at 15; ***Anders*** Brief (custody case) at 15.[12] Grandmother filed no response.

We first address Counsel's petitions to withdraw. ***See In re S.M.B.***, 856 A.2d at 1237 (stating "this Court may not review the merits of the underlying issues until we address counsel's request to withdraw"). To withdraw pursuant to ***Anders***, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that [] she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Redmond***, 273 A.3d 1247, 1252 (Pa. Super. 2022) (quoting ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*)). As to counsel's duty to inform an appellant of her rights in light of counsel's proposed withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client

---

[12] Counsel's failure to file petitions to withdraw as counsel separately from her ***Anders*** briefs is disfavored, but not procedurally fatal to our review. ***See Commonwealth v. Fischetti***, 669 A.2d 399, 400 (Pa. Super. 1995) ("[A]lthough counsel has not filed a separate petition to withdraw, he has set forth his withdrawal request in his ***Anders*** brief. Although we believe the more desirable practice would be to submit a separate withdrawal request to the [C]ourt, we … treat counsel's [request] in the brief itself as such a request." (citations and quotation marks omitted)).

advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, an ***Anders*** brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Here, Counsel states, in both ***Anders*** briefs, that she "has made a conscientious review of the record, the controlling case law and applicable statutes[,] and has concluded that the appeal is wholly frivolous and is not supported by the record." ***Anders*** Brief (adoption case) at 8; ***Anders*** Brief (custody case) at 8. Counsel avers that she mailed Grandmother a letter explaining her rights, and has attached copies of the letters to the ***Anders*** briefs. ***See Anders*** Brief (adoption case), Appendix A; ***Anders*** Brief (custody case), Appendix A. Counsel's letters comply with the law, as they inform Grandmother that she may retain new counsel or proceed *pro se* and raise any additional claims she deems worthy of attention. ***See id.***; ***see also Redmond***, 273 A.3d at 1252.

In addition, Counsel's ***Anders*** briefs summarize the factual and procedural history, identify issues which could arguably support Grandmother's appeal, and detail Counsel's assessment of why the issues are

frivolous, with citations to the record and relevant legal authority. As Counsel has complied with **Anders**, we review the issues presented in the **Anders** briefs. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015); **see also Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appears … to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

At the adoption case, Counsel identifies the following issues:

1. Whether the [juvenile] court committed an error of law and abuse of discretion when it denied [Grandmother's] petition [for] adoption of [Child?]

2. Whether the [juvenile] court committed an error of law and abuse of discretion through its reliance on inadmissible or incompetent evidence[?]

**Anders** Brief (adoption case) at 4 (some capitalization modified).

At the custody case, Counsel identifies the following issues:

1. Whether the [juvenile] court committed an error of law and abuse of discretion when it dismissed with prejudice [Grandmother's] complaint for custody as moot[?]

2. Whether the [juvenile] court committed an error of law and abuse of discretion through its reliance on inadmissible or incompetent evidence[?]

**Anders** Brief (custody case) at 4 (some capitalization modified).

ADOPTION CASE

- 15 -

In her first issue in the adoption case, Grandmother argues that the juvenile court committed reversible error when it denied her petition to adopt Child. ***Anders*** Brief (adoption case) at 4. Counsel points out that, at the August 13, 2024, adoption/custody hearing, Grandmother "testified as to her willingness and ability to care for [] Child, emphasizing the continued access [] Child would have to a supportive and loving biological family while in [Grandmother's] care[.]" ***Id.*** at 12.

Our scope and standard of review are well settled:

> In matters arising under the Adoption Act, "our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported." ***K.N.L.***, 284 A.3d at 132-33 (internal quotations and further citations omitted). Additionally, our standard of review is for an abuse of discretion. This Court will not conclude that there is an abuse of discretion merely because we would have reached a different conclusion. ***In re K.D.***, 144 A.3d 145, 151 (Pa. Super. 2016) (citation omitted). Rather, an appellate court "will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." ***Id.*** (citation omitted).

***In re Adoption of K.B.***, 311 A.3d 1166, 1169 (Pa. Super. 2024) (some citations modified).

We have further explained that "[i]n adoption matters, the paramount concern is the best interests of the child. This determination is made on a case-by-case basis." ***Id.*** (citations omitted). The preservation of the biological family is a consideration in adoption proceedings; however, "the

goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of the children but must be weighed in conjunction with other factors." *Id.* at 1174 (citation omitted). Indeed, we have explained that a court commits an abuse of discretion where it relies "exclusively on the biological nature of a relationship and contact with blood relative[s] when considering an adoption petition, rather than considering the entire record to determine what is in the best interests of a child." *Id.* (citation omitted). Additionally, the court "has the duty to consider the statements and opinions of the Guardian *Ad Litem* when making its determination of which family would better serve the bests interests of the child." *In re K.D.*, 144 A.3d 145, 153 (Pa. Super. 2016) (citation omitted).

Significantly, we have "recognized that adoption in this Commonwealth is purely a statutory right …[, and] the provisions of the Adoption Act must be strictly complied with[.]" *In re Adoption of D.G.J.*, 277 A.3d 1204, 1208 (Pa. Super. 2022). *But see id.* (observing that "[t]he law is not to be construed unreasonably and thus defeat the express purposes of the Act." (citation omitted)).

Pertinent to the instant appeal, the Adoption Act mandates that consent to adopt be given by, *inter alia*, an adoptee or guardian of an adoptee under the following relevant circumstances:

> **(a) General rule.--**Except as otherwise provided in this part, consent to an adoption shall be required of the following:
>
> (1) The adoptee, if over 12 years of age.

\* \* \*

> (5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

23 Pa.C.S.A. § 2711(a)(1), (5); *see also In re Adoption of J.E.F.*, 864 A.2d 1207, 1210 (Pa. Super. 2004) (defining "guardian," as used in Section 2711(a)(5), as "[o]ne who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." (quoting BLACK'S LAW DICTIONARY 725 (8th ed. 2004)). "**Our courts have no authority to decree an adoption in the absence of the statutorily required consents.**" *In re Adoption of D.*, 769 A.2d 508, 509 (Pa. Super. 2001) (emphasis added; citation omitted).

Section 2713 of the Adoption Act provides that a court may, "in its discretion, [] dispense with consents **other than that of the adoptee to a petition for adoption** when: (1) the adoptee is over 18 years of age; or (2) the adoptee is under 18 years of age and has no parent living whose consent is required." 23 Pa.C.S.A. § 2713 (emphasis added; paragraph breaks omitted)); *see also In re E.M.*, 908 A.2d 297, 309 (Pa. Super. 2006) (in a termination of parental rights case, recognizing that the subject children, who were thirteen and fifteen years old, "need to consent to adoption at this point.").

Instantly, the juvenile court rejected Grandmother's exclusive focus on maintaining familial bonds as an overriding factor in adoption proceedings:

In determining which petition to grant, [Foster Mother, T.B., Aunt, and Grandmother stood] on equal footing. This [c]ourt is to give no automatic deference to biological relations, current caretaking role or previous *in loco parentis* status—though each factor into the [c]ourt's assessment of best interest. Preservation of the family and biological relation are factors to be considered in conjunct[ion] with the rest of the evidence in determining what is in [Child's] best interest.

[Grandmother's] argument essentially stands on the value of [her] biological family relation[ship with Child] in principle. [Grandmother] argues that [Child] has been "alienated" from her "vast," supportive family network and that family should be the most important factor in the [c]ourt's decision. This directly contradicts the law, which is that reliance solely on biology would be an abuse of discretion. The [c]ourt must rely on the whole record to determine [Child's] best interest, and the record shows [that] aside from biological relation, [Grandmother] has had hardly any contact and no real relationship with [Child] throughout the entirety of [Child's] life, even prior to [Child's] placement. While laudable that [Grandmother] proffers a desire to maintain family connection, her own testimony belies her argument that she is a willing agent to do so. [Grandmother] previously declined to be a placement resource for [Child's biological] siblings[,] and she took no steps to play an active role or maintain a place of importance in [Child's] life at any point in time prior to filing her petition to adopt [or custody complaint].

Juvenile Court Opinion, 12/23/24, at 29-30 (citations omitted).

The juvenile court further concluded that Child's consent was **required** for Grandmother to be statutorily permitted to adopt Child, who was 14 years old at the conclusion of the adoption/custody hearing:

[I]n order for this [c]ourt to grant the adoption of a child over the age of twelve to any petition, the Adoption Act requires the adoptee's consent. Without the consent of the child over the age

of twelve, this [c]ourt cannot grant a petitioner's petition for adoption.

There is no exception to the requirement of the consent of the adoptee over the age of twelve. Moreover, the legislature explicitly outlined that in certain circumstances "[t]he court, in its discretion, may dispense with consents **other than that of the adoptee** to a petition for adoption …." 23 Pa.C.S.A. § 2713 (emphasis added). Though other required consents may be waived at the [c]ourt's discretion, the adoptee's—if over the age of twelve—may not.

[Child] is fourteen years old. Her consent to her adoption is required by 23 Pa.C.S.A. § 2711(a)(1) and, by law, this [c]ourt cannot dispense with her consent. [Child] made it repeatedly clear [that] she would only consent to being adopted by [Foster Mother]. [Child] was unwavering in that [Child] would not consent to her adoption by [T.B., Aunt, or Grandmother]. Neither caselaw nor statute allows for the [c]ourt to mandate a child over age twelve to be adopted by someone the child does not want to adopt her, nor would it be in [C]hild's best interest to do so.

*Id.* at 34-35 (capitalization modified; footnotes and some citations omitted; emphasis in original).

The juvenile court's factual findings are supported by the record and its legal conclusions are sound. We agree that Child's refusal to consent to adoption by Grandmother is dispositive of Grandmother's first issue.

We emphasize, where a Child is over twelve years of age, she must consent to any proposed adoption. *See* 23 Pa.C.S.A. § 2711(a)(1). The language of Section 2711(a)(1) is "clear and unambiguous"; we may not disregard it. 1 Pa.C.S.A. § 1921(b); *see also Commonwealth v. Ahlborn*, 699 A.2d 718, 720 (Pa. 1997) ("It is well established that when the language

of a statute is clear and unambiguous, it must be given effect in accordance with its plain and obvious meaning." (citations omitted)).[13]

The record discloses that Child was over twelve years of age at the time of the adoption/custody hearing, and that Child repeatedly refused to consent to being adopted by Grandmother. Accordingly, the juvenile court properly denied Grandmother's petition to adopt Child. Section 2711(a)(1) of the Adoption Act precluded the juvenile court from granting Grandmother's petition in light of Child's refusal to consent. *See K.B.*, 311 A.3d at 1169 (we review decisions under the Adoption Act for an abuse of discretion); *see also In re Adoption of D.*, 769 A.2d at 509 ("Our courts have no authority to decree an adoption in the absence of the statutorily required consents." (citation omitted)). Grandmother's first issue is frivolous and merits no relief.

Counsel sets forth Grandmother's second issue in her adoption case as follows: "[Grandmother] contends that the [juvenile] court may have committed an error of law and abuse of discretion through its reliance on inadmissible or incompetent evidence."[14] *Anders* Brief (adoption case) at 12. Counsel states, however, that after her

> thorough review of the record, [C]ounsel cannot identify any instance whereby the [juvenile] court substantially relied upon or considered incompetent or inadmissible evidence in its ruling. … Insofar as [] Child's consent is required and dispositive for an

---

[13] We note that DHS, as the Child's legal guardian, also refused to consent to Grandmother's adoption of Child. *See* 23 Pa.C.S.A. § 2711(a)(5).

[14] The juvenile court did not address this issue in its Rule 1925(a) opinion.

adoption to proceed, [] Child testified before the court *in camera* on multiple occasions. *See* N.T., 6/14/24, at 34, 42, 47-48, 84; N.T. (Vol. II), 2/20/24, at 5, 30-32, 65-66. … Accordingly, any claim by [Grandmother] that the [juvenile] court may have committed reversible error [by relying on inadmissible or incompetent evidence] is [] without merit[.]

*Anders* Brief (adoption case) at 12-13 (citations, punctuation, and capitalization modified).

Our standard of review is well settled:

[T]he decision of whether to admit or exclude evidence is within the sound discretion of the [juvenile] court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the [juvenile] court overrides or misapplies the law.

*In re A.J.R.-H.*, 188 A.3d 1157, 1166–67 (Pa. 2018) (internal citations omitted).

Instantly, upon review of Counsel's *Anders* brief and the certified record, we, like Counsel, are unable to identify any instance where the juvenile court arguably relied on inadmissible or incompetent evidence. Accordingly, we conclude the juvenile court did not abuse its discretion in its evidentiary rulings and its consideration of the evidence. *See In re A.J.R.-H.*, 188 A.3d at 1166-67. Grandmother's second issue in the adoption case is frivolous and meritless.

<u>CUSTODY CASE</u>

In her first issue in the custody case, Counsel states that Grandmother "alleges that the [juvenile] court committed an error of law and abuse of

discretion when it dismissed [as moot Grandmother's] complaint for custody of [Child]." **Anders** Brief (custody case) at 9 (capitalization modified).

"Mootness … is a question of law. Therefore, our scope of review is plenary; our standard is *de novo*." **Crespo v. Hughes**, 292 A.3d 612, 617 (Pa. Super. 2023) (citations and ellipsis omitted).

Concerning mootness, we have observed that

> [a]s a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.

*Id.* (citations omitted).

We have stated that "[a] decree of adoption terminates forever all relations between a child and his biological parents and severs the child entirely from its own family tree and engrafts it upon its new parentage." **E.T.S. v. S.L.H.**, 54 A.3d 880, 883 (Pa. Super. 2012) (quoting **In re R.J.S.**, 889 A.2d 92, 100 n.7 (Pa. Super. 2005)).

Pertinently, the Child Custody Act describes the effect of adoption on certain parties seeking custody of a child:

> **Any rights to seek physical custody or legal custody rights** and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent **prior to the adoption of the child by an individual other than a stepparent, grandparent or great-grandparent <u>shall be automatically terminated</u> upon such adoption**.

- 23 -

23 Pa.C.S.A. § 5326 (emphasis added).

Instantly, recognizing the above-cited authority, the juvenile court concluded Grandmother's custody complaint was terminated when the juvenile court granted Foster Mother's petition to adopt Child:

> As [Foster Mother] is not a stepparent, grandparent or great-grandparent, pursuant to [Section] 5326, … [Grandmother's] rights to file for custody as a grandparent [were] automatically terminated upon [Child's] adoption. … The law is that adoption effectively severs [C]hild entirely from her previous family tree and wholly engrafts her into her new family with all the rights and protections thereof.  **See R.J.S.**, 889 A.3d at 100 n.7.

Juvenile Court Opinion, 12/23/24, at 38 (quotation marks and some citations omitted).

We agree with the conclusion of the juvenile court, as it comports with applicable law.  **See Crespo**, 292 A.3d at 617.  When the juvenile court granted Foster Mother's petition to adopt Child, Grandmother lost any rights to pursue physical or legal custody of Child.  **See** 23 Pa.C.S.A. § 5326; **see also E.T.S.**, 54 A.3d at 883.  Consequently, any ruling on Grandmother's custody complaint could not "have any practical effect on the existing controversy."  **Crespo**, 292 A.3d at 617.  Accordingly, Grandmother's challenge to the juvenile court's denial of Grandmother's custody complaint as moot is without merit and frivolous.[15]

---

[15] Having concluded the juvenile court correctly determined that Grandmother's challenge to the denial of her custody complaint was moot, we need not address Grandmother's second issue in her custody case.

Finally, our independent examination of the record indicates that there are no other non-frivolous claims that Grandmother can raise. *See Flowers*, 113 A.3d at 1250. We agree with Counsel's assessment that Grandmother's appeal is frivolous, and grant Counsel permission to withdraw from her representation of Grandmother.

Petitions to withdraw granted. Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2025